# ANDREW J. RICHARDSON v. ST. LOUIS & HAN-NIBAL RAILWAY COMPANY, Appellant.

### Division Two, November 23, 1909.

1. **NEGLIGENCE: Choosing Dangerous Way: Question for Jury.** The fact that the brakeman was injured in coupling cars does not of itself show that he was guilty of contributory negligence in choosing a dangerous way when a safe one was open to him. The result is not the true test. Where the object was to couple two cars, and their drawheads were separated only by a short link which became fastened between them crosswise, and it was the judgment of both brakemen that the link might be adjusted by "slacking back easy," and then the coupling be effected, and that was considered a safe plan, it is a question for the jury to determine whether the brakeman who gave the signal and undertook to make the coupling, and was injured by the cars coming together, was guilty of contributory negligence in pursuing that way, there being another way that was safe.

2. **————: Comparative.** There is no comparative negligence in this State. Courts do not undertake to sever, apportion and discriminate between two or more directly negligent acts so as to decide which act caused the injury. So that where the brakeman, before going between the cars to adjust a link between their drawheads, gave a signal to the engineer to "slack up easy," and both the fireman who received the signal was negligent in transmitting it to the engineer, or if properly transmitted the engineer was negligent in not obeying it, but pushed the cars together, and the brakeman was negligent in going between the cars to adjust the defective automatic coupler and also in putting his hand in the three-inch space between the drawheads, he cannot recover for the injury to his hand caused by the cars coming together. But where the evidence is that if the train had separated, or "slacked back easy," there was no particular danger, the brakeman cannot, though the coupler was defective, be held to be negligent as a matter of law, but the question is one for the jury.

3. **————: Concurrent Acts.** Where the charge is that the plaintiff brakeman, in attempting to adjust the link of a car coupler, was injured through the failure of the engineer and fireman to properly obey the plaintiff's signal to "slack back easy," it is not necessary to his case that both the engineer and fireman should have been guilty of the same act of negligence, or each

of a distinct act. If either of them, in disobedience to the signal, either directly or indirectly, caused the cars to come together and thereby to injure the plaintiff, then the railroad company is liable, unless the plaintiff was guilty of contributory negligence; and an instruction requiring the jury to find both the engineer and the fireman were negligent required them to find more than was necessary, and of that the defendant cannot complain.

4. ————: Refusing Instructions: Matter Covered by Another. Where the subjects embraced in an instruction asked are fully covered by another given, it is not error to refuse it, though in some respects it is more elaborate than the one given.

5. ————: Pleading: Variance: Impossible Negligence of Both Engineer and Fireman: Fireman as Brakeman's Agent. The petition charged that plaintiff brakeman, undertaking to couple cars, gave a signal to "slack back easy," in order that he might adjust the coupler, and that through the negligence of the engineer and fireman in disobeying the signal, the cars were brought together and he was injured. The engineer could not, from his position, see the signal, and the fireman testified that he transmitted it correctly to the engineer and the engineer that he obeyed it as transmitted to him. It is contended that both engineer and fireman could not have been negligent; that the fireman was the agent of the brakeman to transmit the signal, and if he did it wrongfully and the engineer obeyed it as received, the company is not liable. *Held, first*, that any number of distinct acts of negligence which are of the same character and naturally lead up to and contribute to the same accident, may be charged in the same count of the petition, and proof of any one or all will be sufficient to support a general verdict; *second*, it is the duty of both the engineer and fireman to receive signals and plaintiff's case does not require that each receive the signal directly from the brakeman before the duty to obey arises; and, *third*, the burden was not upon plaintiff to prove both the engineer and fireman were negligent, though both were alleged to be, but it was sufficient to show that the signal was to "slack back easy," and was received by the fireman, but the movement was in the opposite direction.

6. EXCESSIVE VERDICT: $5,000. The brakeman, as a result of an injury received in coupling cars, lost the thumb of the left hand, and the third finger to the second joint, the other fingers are stiff and he suffers from pain in them in cold weather. He had previously lost three fingers of the right hand in a planing mill, and testified that in his present condition he was unable to get employment. *Held*, under the circumstances, that a verdict for $5,000 is excessive by $1,000.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED CONDITIONALLY.

*W. O. Gray, Geo. A. Mahon* and *J. D. Hostetter* for appellant.

(1)   All the evidence shows that plaintiff, with full knowledge of the defective coupler, and with full knowledge that there was a dangerous and a safe way in which to move the car, adopted the dangerous mode, and thereby was guilty of contributory negligence and cannot recover.  Defendant's demurrer to the evidence should have been sustained.  Hurst v. Railroad, 163 Mo. 322; Moor v. Railroad, 146 Mo. 572; 1 Bailey on Personal Injury, secs. 1121-23; Gilbert v. Railroad, 128 Fed. 534; Morris v. Railroad, 108 Fed. 749; George v. Railroad, 19 So. 784; Richmond & D. R. Co. v. Bevins, 15 So. 115; Montgomery v. Railroad, 109 Mo. App. 88.   (2)   Even conceding that defendant's agents or servants were guilty of negligence in bringing the cars together instead of separating the same, still plaintiff cannot recover because he was guilty of negligence in going in between the cars for the purpose of using the defective coupler, and was also guilty of negligence in putting his hand in the three-inch space between the two draw-bars, which were only held apart by the link which had been fastened crosswise, and which was liable to slip in on the slightest jar and let the draw-bars come together.  These acts of negligence directly contributed to the cause of plaintiff's injury.  Hogan v. Railroad, 150 Mo. 36, 55; O'Donnell v. Patton, 117 Mo. 20; Doerr v. St. Louis Brewing Ass'n, 176 Mo. 547; Moore v. Railroad, 146 Mo. 572.   (3)   Plaintiff's own testimony shows that he never gave any signal to the engineer, but the only signal he gave was one to the fireman; this signal he expected to reach the engineer by being transmitted to him by the fireman. Hence there was no evidence to support the hypothesis

that plaintiff gave a signal to the engineer. A party will be limited in his right to recover, to the specific acts of negligence pleaded; and a recovery on unpleaded acts of negligence will not be permitted to stand. Waldhier v. Railroad, 71 Mo. 514; Schneider v. Railroad, 75 Mo. 296; Chitty v. Railroad, 148 Mo. 75; McManamee v. Railroad, 135 Mo. 440; McCarty v. Hotel Co., 144 Mo. 397; Yarnell v. Railroad, 113 Mo. 570; Melvin v. Railroad, 89 Mo. 106; Woods v. Campbell, 110 Mo. 572; Price v. Railroad, 72 Mo. 414; Standard Milling Co. v. Transit Co., 122 Mo. 277; Hite v. Railroad, 130 Mo. 136; Mason v. Railroad, 75 Mo. App. 10; Bartley v. Railroad, 148 Mo. 124; Feary v. Railroad, 162 Mo. 75; Hamilton v. Railroad, 114 Mo. 509; McGrath v. Railroad, 197 Mo. 97; Orcutt v. Cent. Co., 201 Mo. 424. There was a fatal variance between the allegations in plaintiff's petition and the proof. The only charge of negligence leveled against both the fireman and engineer was a failure "to observe and obey" his signal, and plaintiff has signally failed to "make good" with his proof.

*Elliott W. Major* and *Jesse B. Jones* for respondent.

Questions of negligence and contributory negligence must be determined by the particular facts and circumstances surounding each case, as there is no absolute rule by which we can be guided. Therefore, what is due care and caution on the part of plaintiff, is a question for the jury under all the facts and circumstances in proof to be determined in the light of the dangers to be reasonably apprehended. Each case depends upon its own merits and cannot be settled offhand on a mere general rule. Henry v. Railroad, 113 Mo. 536; Bowen v. Railroad, 95 Mo. 275; Van Natta v. Railroad, 133 Mo. 19; Appel v. Eaton & Prince Co., 97 Mo. App. 435; Rogers v. Printing Co., 103 Mo. App. 688; Weller v. Railroad, 164 Mo. 199. Every reason-

able inference of fact which the evidence will bear must be indulged in favor of plaintiff.    Appel v. Eaton & Prince Co., 97 Mo. App. 439; Graney v. St. Louis, 141 Mo. 185; Harney v. Railroad, 80 Mo. App. 667; Owens v. Railroad, 84 Mo. App. 148; Dunphy v. Stock Yards Co., 118 Mo. App. 512.    (1)    There is no such thing as a safe way and a dangerous way involved, as appellant seeks to apply same.    The coupling itself could be made in two ways, one by coupling the cars as they came together, the other to couple the cars as they separated. The evidence shows conclusively that plaintiff adopted the safer of the two ways in which to make the coupling. That the safer way was to make same as the cars separated; and, in fact, that no injury could possibly happen in proceeding the way plaintiff adopted, if the fireman and engineer separated the cars as signaled. At the time plaintiff was called upon to exercise his judgment as to how he would remove the car of coal, there was no danger apparent to anyone.    No one knew of any defects any place, as to couplings or otherwise. Plaintiff, therefore, having attempted to couple the cars as they were to separate, adopting a safe and prudent way, cannot be charged with negligence.    He was authorized to believe that the train would be separated as ordered and the law does not require him to wait before acting to discover whether or not obedience would be given to his signal.    The whole matter therefore became a question for the jury.    Cambron v. Railroad, 165 Mo. 560; Dunphy v. Stock Yards Co., 118 Mo. App. 518-521; Harney v. Railroad, 80 Mo. App. 667; Adams v. Harvesting Machine Co., 95 Mo. App. 111; Hamilton v. Mining Co., 108 Mo. 364; Lawrence v. Ice Co., 119 Mo. App. 316. The fact that plaintiff was injured in the way he was performing his duty which he selected, when, if he had selected some other way the injury might or would not have happened to him does not pronounce him careless or make his acts negligent.    Dunphy v. Stock Yards Co., 118 Mo. App.

520; 1 Bailey on Master and Servant, sec. 1122. (2) In attempting to make the coupling the way plaintiff did and in taking hold of the draw-bar the way he did, it was impossible for him to be injured and he pursued the safe course, if the fireman and engineer separated the train as directed. Had the fireman and engineer moved the train west as plaintiff signaled, then the cars would have separated slowly and plaintiff would not have been injured. When reasonable minds may fairly differ upon the question as to whether or not a party is guilty of negligence contributing directly to his injury, the case is one for the consideration of the jury. Weller v. Railroad, 164 Mo. 205; Erickson v. Railroad, 171 Mo. 660; Luckel v. Century Bldg. Co., 177 Mo. 630; Allen v. Railroad, 183 Mo. 426; Young v. Waters-Pierce Oil Co., 185 Mo. 668; Hollenbeck v. Railroad, 141 Mo. 110; Phippin v. Railroad, 196 Mo. 345; Barry v. Railroad, 98 Mo. 70; Lynch v. Railroad, 112 Mo. 442; Dunphy v. Stock Yards Co., 118 Mo. App. 518; Owens v. Railroad, 84 Mo. App. 143; Adams v. Harvesting Co., 95 Mo. App. 111; Reed v. Railroad, 107 Mo. App. 246; Harris v. Cooperage Co., 107 Mo. App. 249; Meng v. Railroad, 108 Mo. App. 553. (3) The allegations in the petition must be liberally construed with a view to substantial justice and they are sufficiently broad to admit of every proof in evidence and all reasonable inferences from the evidence and upon which the court instructed. See sec. 629, R. S. 1899; Young v. Iron Co., 103 Mo. 324; Bank v. Scalzo, 127 Mo. 164; Oglesby v. Railroad, 150 Mo. 155. Appellant complains of the use of the word "and" between fireman and engineer in plaintiff's instruction numbered 1 and the word "or" in defendant's seventh instruction as modified by the court. That the pleading stated "fireman and engineer" and that the seventh instruction on the part of defendant was "fireman or engineer," under certain interpretations and inferences from the evidence. By using the word

"and" between fireman and engineer in plaintiff's instruction, and the word "or" in defendant's seventh instruction, plaintiff's instruction required the jury to find more than defendant's instruction and the error, if any, was in favor of defendant and he should not complain and would be harmless.  Harrington v. City of Sedalia, 98 Mo. 583; Sprague v. See, 152 Mo. 339; Summers v. Ins. Co., 90 Mo. App. 691; Knight v. Lead and Zinc Co., 91 Mo. App. 574; Goodson v. Embleton, 106 Mo. App. 77; McKinstry v. Railroad, 108 Mo. App. 21.

FOX, J.—This cause is pending in this court on appeal from a judgment rendered in the circuit court of Pike county, in favor of respondent Richardson, and against appellant.

The action is for damages for injuries received by respondent on the 25th day of September, 1903, at Gilmore, while an employee of appellant.  The substance of the charge on which respondent recovered in the circuit court is that, while he, as one of appellant's brakemen, was endeavoring to couple cars, he gave a certain signal to the engineer and fireman in charge of the engine pulling the train of which he and said engineer and fireman were a part of the crew running and operating same; that this signal, although observed and understood, was not heeded, but that the engineer, instead of backing and separating the cars, as the signal indicated, put his engine in a forward motion, suddenly shoved the cars together and injured the respondent.  In other words, it was charged that his injuries were due to the negligence of the engineer and fireman in not heeding and obeying his signal to "slack back easy."  The answer was a general denial and a charge of contributory negligence and assumption of risk.

The facts upon the record are substantially that appellant's railroad runs in a north and south direc-

tion, beginning at Hannibal and terminating at Gilmore, a station about forty miles west of St. Louis on the line of the Wabash Railway Company. The two roads interchange business at this point. Appellant maintains yards at Gilmore. Its main line runs just north of the depot and the main line of the Wabash runs just south of the depot. North of the depot and appellant's main line are its yards, consisting of three main side tracks extending in a general east-and-west course, numbered 1, 2 and 3, and converging at a point curved to the northwest of a coal chute of appellant's. A plat is hereto appended, marked "Exhibit 1," which illustrates and makes clear the situation in the yards.

On the day of the injury complained of, Smith as conductor, Collins as engineer, Durell as fireman, respondent as head brakeman and Lowry as hind brakeman, composed the crew which ran and operated a mixed train from Hannibal to Gilmore, over appellant's line of railroad. The injury was received about 5 o'clock p. m., while this same crew was working in appellant's yards at Gilmore, and while they were immediately engaged in the attempt to take a car of coal (No. 8 on plat) from side track No. 1 and place it at the coal chute, shown on plat.

The train having come in from Hannibal, the engine, when it got into the yards, was headed east. At the time there was standing on side track No. 1, beginning west and extending east, five freight cars, an engine tank (No. 6), a stock car and a loaded coal car (No. 8), the coal car being the extreme east car. Respondent, who as head brakeman had charge of switching in the yards, signalled or directed the engineer to head in on side track No. 1 for the purpose of taking out the coal car No. 8 and placing it at the coal chute indicated on the plat. The engine was coupled to car No. 1, and then the couplings were made between cars 1, 2, 3, 4 and 5, No. 5 being already coupled to engine tank No. 6. Then an effort was made by Lowry

to couple the engine tank No. 6 to stock car No. 7, when it was found that the automatic coupler on the engine tank was out of order and had been supplied with link and pin. Lowry failed to make the coupling, when the stock car, by reason of the impetus given it by the impact, went some distance east, and as the grade sloped west at that point the coal car rolled back against the engine tank, when respondent undertook to make the coupling and failed. Then all the cars as well as the engine came to a standstill. The coal car was some little distance east and was not connected but was standing. All the cars from the engine tank to the engine were conected by couplings. The links used to couple the stock car and engine tank became crossed and held the drawheads apart several inches. Both respondent and Lowry were trying to make the coupling between cars 6 and 7, respondent being on the north side and Lowry on the south side of the track. From where they were looking toward the engine, side track No. 1 curved to the north, hence respondent was in sight of the fireman's side of the engine, while Lowry could not see the engine. Then it was concluded by the two brakemen to try to make the coupling by having the engineer "slack back easy," which would separate the cars slowly, and that signal was given by respondent, which was received and understood by the fireman. For the purpose of adjusting one of the drawheads when they separated, as respondent claimed, he had his left hand between the drawheads. When the engine moved, instead of separating, the drawheads came together and injured respondent's left hand. The signal as given and understood by the fireman, was intended to move the engine and cars coupled, west, while as a matter of fact the two uncoupled cars came together, which indicated an east movement of some kind. Respondent claims that the movement was east to the extent of about one step, which he had to take. Lowry says it was done so quick-

ly that he did not notice which way the cars moved, but that the indications were that they moved slightly east. As soon as the accident happened, Lowry ran from the track some twenty or thirty feet and slacked the engine back so that respondent's hand could be extricated from between the drawheads. The fireman says he understood the signal, gave it correctly to the engineer, and both say that the engineer reversed his engine, which was then set for forward motion, and that he complied with the commands of the signals. No one knew of the defective coupler on the engine tank until it was discovered by Lowry. He gave the information to respondent. The witnesses agreed that if when the signal was given by respondent the cars had separated as was intended, there would have been very little danger, if any, of injury. It was shown that the coal car No. 8 could have been taken out by pulling out all the cars up to and including the engine tank, setting them on a side track and then going back for the stock and coal cars. This mode was adopted after respondent was hurt. It was also shown that but for cars on side tracks 2 and 3, the engine could have come in and picked up the coal car from the east and set it at the coal chute by a drop switch, which was against the rules of the company.

This substantially indicates the nature and character of the testimony upon which this cause was submitted to the jury. At the close of the evidence numerous instructions were requested by the litigants in this controversy, some of which were given and others refused. We do not deem it necessary to here reproduce the instructions, but will give them proper attention during the course of the opinion. The cause being submitted to the jury upon the evidence and the instructions of the court, they returned their verdict finding the issues for the plaintiff, and assessed his damages at the sum of five thousand dollars.

Timely motions for a new trial and in arrest of

judgment were filled, and by the court taken up and overruled. Judgment was entered in accordance with the verdict, and from this judgment the defendant prosecuted its appeal and the record is now before us for consideration.

## OPINION.

The record in this cause presents numerous assignments of errors as a basis for the reversal of this judgment. We will give the complaints of the appellant such attention as their importance merits and requires.

We have stated substantially the facts developed upon the trial, and in order to properly appreciate the important propositions presented to our consideration, it is well to indicate briefly the declarations of law given by the court in the submission of this cause to the jury.

By instruction numbered 1 given for respondent, Richardson, the jury were told that if he, while in the exercise of ordinary care and prudence, was attempting to couple a tank and stock car and while attempting to do so he gave to the fireman, Durell, and the engineer, Collins, both of whom were at the time and place in the employment of appellant upon engine No. 6, a signal to open up the train, and said fireman and engineer negligently and carelessly failed to observe and obey said signal, so given by respondent, to open up said train, but, on the contrary, carelessly and negligently moved said train of cars in an opposite direction to the signal given, thereby injuring respondent, then he was entitled to recover.

It will be observed by an inspection of this instruction that the jury were required to find that both the fireman and engineer were negligent, and that their negligence was the cause of the injury.

Instruction numbered 1 given for appellant directed the jury that if they found from the evidence

that respondent voluntarily adopted a dangerous method of removing the car of coal, and that at the time he knew there was a safe method of removing said car, then respondent could not recover.

Instruction numbered 3 given for appellant told the jury that if the fireman correctly communicated the signal to the engineer and the engineer moved the engine about eighteen inches to the western direction and then stopped and by reason of the stopping the cars rebounded and caught respondent's hand, then he could not recover.

Instruction numbered 5 given for appellant directed the jury that if respondent voluntarily placed his hand between the two drawbars and the act of doing so was a dangerous one and one that a person of ordinary care and prudence would not have done under the same circumstances, then respondent could not recover.

By instruction numbered 8 given at the request of appellant the jury were told that if they believed from the evidence that the fireman failed to correctly communicate to the engineer the signal given by respondent, he could not recover provided his injury resulted from the failure of the fireman to so correctly transmit such signal. And by instruction numbered 9, also given at the instance of the appellant, the jury were told that if the fireman incorrectly communicated such signal to the engineer and the engineer acted upon and obeyed such incorrectly communicated signal, and respondent's injury resulted therefrom, he could not recover under the allegations of the petition.

By instruction numbered 2, asked by appellant and as modified by the court, the jury were charged that if respondent did not in point of fact give such signal to the engineer, either directly or with the help of the fireman, then there was a variance between the proof and the allegations of the petition. The court added

after the word engineer, these words: "Either direct-ly or with the help of the fireman."

By instruction numbered 7, requested by appel-lant, the court was asked to tell the jury that the bur-den of proof was upon respondent to show that his injury was the result of the negligence of the fireman and engineer. The court modified this instruction by making it read "fireman or engineer."

Other instructions were given which it will not be necessary to notice as no objections to them have been raised. Instructions numbered 10, 11, 12, 13, 14 and 15 will be referred to sufficiently to indicate our views concerning them.

At the close of respondent's evidence, as well as at the close of all the testimony, appellant asked instruc-tions in the nature of demurrers, which the court re-fused to give. The propriety of these rulings will be determined in the discussion of the points presented by appellant to this court.

## I.

It is contended by appellant that all the evidence shows that respondent, with full knowledge of the de-fective coupler, and with full knowledge that there was a dangerous and a safe way in which to move the coal car, adopted the dangerous way, and thereby was guil-ty of contributory negligence, and should not have re-covered.

"It is a familiar principle, which common sense as well as the rules of law ought to teach anyone, that where an employee of a railway knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence. [Hurst v. Railroad, 163 Mo. 309.] In the Hurst case the plaintiff, who was a brakeman, boarded a caboose at a dangerous place while it was moving seven or eight miles an hour. He had the opportunity

223 Sup—22

and power of stopping the caboose for the purpose of getting on, but instead of doing so, gave the signal to go on and attempted to board the caboose while it was moving. It was correctly held that he was guilty of contributory negligence. The question in this case as to whether or not it would have been safer for respondent in the first instance to have adopted the plan of moving the coal car out without coupling the engine tank and stock car, was submitted to the jury under a proper instruction; and as we think, in this case, considering all the circumstances, it was a question for the jury to determine, they having determined it and there being evidence in the record upon which to base the finding of the jury, it should not be disturbed. It must not be overlooked that respondent did not know that this engine tank was among the cars on track No. 1 until an attempt was made to couple it. The automatic coupler on the engine tank was out of repair and would not work. The evidence shows that in such cases links and pins were used. Brakeman Lowry attempted to couple the engine tank and stock car by means of pin and link, but failed. Respondent also attempted to couple them on the rebound and failed. At this point the drawheads of the engine tank and stock car were separated only by a short link which became fastened between them crosswise. In other words, there was three or four inches between them on one side and seven or eight on the other. It was the judgment of both brakemen that a coupling might be effected by ''slacking back easy.'' They both agree, in fact the evidence is undisputed on the point, that if the engine had moved back or separated these two cars there was no danger. At the time respondent was injured he and Lowry were attempting to couple the engine tank and stock car as they separated, and not by bringing them together. This was considered to be a safe plan whether it worked or not. The simple fact that respondent was hurt and that the coupler on the engine tank was

out of order, does not conclusively show that he was guilty of contributory negligence. The result is not the true test, and the mere fact that a servant is injured because of the way of performing a duty which he selected, when if he had selected the other way injury would have been avoided, would not authorize the conclusion that he was careless. [1 Bailey on Master and Servant, sec. 1122.]

## II.

It is next insisted by appellant that respondent cannot recover, because he was guilty of negligence in going between the cars for the purpose of using the defective coupler, and was also guilty of negligence in putting his hand in the three-inch space between the two drawheads.

If it is true that both the engineer and the fireman, or either of them, and the respondent, were guilty of negligence which directly contributed to cause the injury, there can be no recovery, for the courts never undertake to sever, apportion and discriminate between two directly negligent acts so as to decide which act caused the injury. There is no comparative negligence in this State. [Hogan v. Railroad, 150 Mo. 36.] But can it be said as a matter of law that respondent was guilty of negligence even though the coupler was defective and that he was liable to be injured? If, as the witnesses state, the train had separated, or had "slacked back easy," in obedience to the signal given, there was no particular danger of injury to the respondent, even though he did have his hand between the couplers, then it occurs to us that the question of contributory negligence of respondent was properly submitted to the jury. The jury could very well find under the evidence that, even though respondent knew the coupler was defective, in obedience to the signal to "slack back easy" the cars would separate, and that

an ordinarily prudent and careful man would have done as he did.

In the consideration of the subject of contributory negligence we have been unable to find any case which seems to be more pertinent to the facts of this case than Weller v. Railroad, 164 Mo. l. c. 205. This court in treating of the proposition in that case, speaking through Burgess, J., very clearly and correctly announced the rule. It was there said: "It is not sufficient that the evidence on behalf of the defendant tended to show that deceased was guilty of negligence contributing directly to his injury, but before this court can declare as a matter of law that deceased was guilty of such negligence, the evidence must be substantially all one way, and not such that reasonable minds might differ with respect thereto. This case, we think, belongs to the latter class, and was properly submitted to the jury."

The mere fact that the coupler may have been defective and that risk was incurred by its use, would not as a matter of law defeat respondent's action, where the danger was not such as to threaten immediate injury, or where, as is shown in this case, it was reasonable to suppose that the signals given would be obeyed, and that therefore the defective coupler and pin and link might be safely used by the exercise of care and caution as contemplated by respondent and Brakeman Lowry. [Hamilton v. Mining Co., 108 Mo. 364.]

### III.

It is next contended that the court erred in giving instruction numbered 1. That instruction practically required the jury to find that both the engineer and fireman were negligent. In his petition it is alleged that respondent gave the signal to the fireman and engineer to open up the cars to be coupled, and that the servants of appellant in charge of the engine negligently and carelessly failed to observe and obey said

signal, but, instead, negligently moved said engine and train of cars in the opposite direction to that indicated by the signal. Respondent then goes on to state that by reason of the negligence of the fireman and engineer and their failure to observe and obey the said signal, he was injured.

The rule applicable to separate acts of negligence, which, concurring in operation, produce a joint result, is well stated in Dutro v. Railroad, 111 Mo. App. 258. On that subject in that case it was said: "A cause of action may be founded on two separate acts of negligence which concurring in operation produce a joint result—the injury. The fact of concurrence precludes the supposition of any repugnancy between them, for acts which co-operate are necessarily in harmony, else they would not work together. This somewhat trite observation is called forth by the assumption of defendant that under the allegations of the petition proof of one of the negligent acts would tend to disprove the other. This is not true. . . . No authority cited goes to the extent of holding the plaintiff to proof of all the acts of negligence specified. If such rule prevailed it would be difficult, indeed, for any case arising in tort to run the gauntlet of judicial scrutiny and survive."

The engineer and fireman were both fellow-servants of respondent. The charge is that it was through their negligence that he was injured. By reason of their negligence and failure to properly obey the signal given by respondent to "slack back easy" he was injured. It is quite apparent that it was not necessary, even under the allegations of the petition, that both the engineer and fireman should have been guilty of the same act of negligence, or of two distinct acts. If either of them, in disobedience to the signal given by respondent, either directly or indirectly, caused the engine to move forward or east, and thereby caused the two cars, that is to say, the engine tank and the coal car, to come together and injure respondent, then

the appellant is liable, unless respondent was guilty of contributory negligence, and of that guilt he was exonerated by the jury.

Instruction numbered 1 given by the court, of which appellant complains, simply required the jury to find more than was necessary—that is to say, it required them to find that both the engineer and fireman were negligent. Manifestly appellant has no ground of complaint by reason of the court by instruction numbered 1 placing a greater burden upon the plaintiff than under the law he was required to carry.

Directing our attention to the instructions given at the request of the appellant, it is sufficient to say that they were extremely favorable, and it is very questionable as to whether or not they were not more favorable to the appellant than was authorized by the evidence. In our opinion the court did not err in modifying instructions numbered 2 and 7 asked by appellant.

Appellant urges no special reason why instructions numbered 10, 11, 12 and 14 were improperly refused, but earnestly insists that instruction numbered 13 should have been given and that the court erred in refusing it. That instruction told the jury that if they believed from the evidence that a method of removing said coal car without using the defective coupling on the engine tank would require more work and time than the method which was attempted to be used, and they further found that the first method was safe and the method used a dangerous one, that such extra work and time would not excuse respondent for voluntarily adopting the dangerous one. The subjects embraced in that instruction are fully covered and submitted to the jury by instruction numbered 1 given by the court for appellant, hence there was no error in the action of the court in refusing to give instruction numbered 13.

IV.

It is next insisted that there was a variance between the proof and the allegations of the petition. The petition alleges, and the circuit court so submitted by instruction numbered 1, that the injury to respondent was due to the neglect and failure of the fireman and engineer to observe and obey the signal given by respondent. It will be remembered that respondent was, at the time of giving the signal, on the inside of a curve and that the engine was headed toward him, and therefore only the fireman's side of the engine was in his view. The evidence discloses that as a matter of fact the engineer did not and could not observe respondent's signal, but that the fireman did see the signal and correctly understood it. It is also undisputed that the fireman in response to respondent's signal communicated some kind of signal to the engineer. The fireman testified that he communicated the correct signal or the one given by respondent. His having done so is contradicted only by the evidence tending to show that in response to the signal the train moved east instead of west, thus bringing the engine tank and the stock car suddenly together. The argument of appellant is that respondent failed to show that both the fireman and engineer were negligent, and that in the very nature of things they could not both be negligent; that if the fireman correctly communicated respondent's signal to the engineer then the fireman was not guilty of negligence, and if the fireman incorrectly communicated the signal to the engineer and he followed the incorrect signal by moving the train east, then the engineer was not guilty of negligence. In other words, the argument results in making the fireman the agent of respondent, so that therefore the appellant would not be responsible for the acts of the fireman, even though they did result in the injury received by respondent.

We think the petition states two distinct acts of negligence, but of the same character and class and each tending to cause the same accident. While it is true that respondent's petition does allege the negligence of the engineer and the fireman, connecting the two by the conjunction *and,* yet, it being proper to allege one or more acts of negligence, all contributing to the same accident, in one count of the petition, we are of the opinion that, simply because the conjunction *and* was used in the allegation connecting the engineer and fireman in charging the commission of the acts of negligence, this would not require respondent to make proof that both the engineer and fireman jointly committed the acts of negligence. [McHugh v. Transit Co., 190 Mo. 85; Hill v. Railroad, 121 Mo. 477.]

It seems clear to us that either the fireman or the engineer could have been responsible for the accident. If the fireman wrongfully communicated the signal to the engineer and the engineer moved the train east, then the fireman's carelessness was the cause of the accident and a sufficient cause to justify submission of the question to the jury. If, on the other hand, the fireman correctly communicated respondent's signal to the engineer and he failed to observe and obey same, we can not understand why the engineer's default should not be regarded as a proximate cause of the accident; and such acts upon his part would come within the purview of the pleadings. It is undoubtedly the duty of both the fireman and engineer to receive signals, and it is not required that each receive the signal directly from the person giving same before the duty to obey arises.

As pointed out by the authorities above cited, two acts of negligence of a different class, that is to say, a common law ground of negligence and a statutory ground, cannot be united in the same count, but may be set up in different counts of the same petition. But where the acts of negligence charged are of the same

character and naturally lead up to and contribute to the same accident, any number of distinct acts may be alleged in one count and upon proof of any one or all a general verdict will be sufficient.

The court further instructed the jury that if they found from the evidence that respondent gave a "slack up easy" signal, and that in obedience thereto the engineer moved his engine approximately eighteen inches in a westerly direction and then stopped same, and that the cars rebounded and caught respondent's hand, then the verdict should be for defendant. This instruction embraces one of appellant's principal theories as to the immediate cause of the accident. But there being testimony to rebut this theory, and it having been resolved against appellant by the jury under a liberal instruction, it is no longer a question of law, and its further discussion by this court would avail nothing.

It may also be further said concerning the facts of this case that there was evidence tending to show that the plaintiff did not know of the defective coupling on the engine tank until the engine was in on side track No. 1. That there was a way which might be regarded as a safer one to move the coal car than to couple the engine tank and stock car, but that the mode adopted involved less time and work, and that it was reasonably safe, at least from the evidence in the case the danger was not so glaring and clearly apparent as would authorize the trial court in declaring as a matter of law that the plaintiff was guilty of contributory negligence in the adoption of the method of making the coupling that he did.

## V.

It is next insisted by learned counsel for appellant that the verdict returned by the jury for five thousand dollars in favor of the plaintiff, is excessive; that it was the result of passion and prejudice.

The evidence upon this question, as disclosed by the record, shows that plaintiff lost the thumb and about one-half of the third finger on the left hand. The plaintiff testified that it cut across his hand, and indicating one of his fingers, he says it was cut to the joint wide open clear down to the bone; left his finger stiff and tender; that it gives him lots of trouble and that he suffers from the cold; that he is unable to grip or touch anything with it to amount to anything; that he was taken to the company hospital where he stayed a week when the thumb and third finger to the second joint were taken off; that his fingers are stiff; has no strength or grip in them and cannot close them tight; that he cannot get work on any railroad; the index finger was saved but it is stiff; that the little finger and one next to it are uninjured. It further appears in evidence that when the plaintiff was fifteen years old he lost, in a planing mill, the index finger and the second and third from it on the right hand; that with his right hand injured as it was he was unable to get employment on a standard road; that his wages at the time of his injury were $50 a month. Plaintiff was twenty-seven years old at the time he testified. No other evidence was offered touching the character of plaintiff's injuries.

While there is an entire absence of any disclosures in the record indicating any passion or prejudice on the part of the jury, yet it may be that the condition of both hands of this plaintiff in the presence of the jury—the defendant not being at all responsible for the injuries to the right hand—might have aroused a feeling of compassion and sympathy for the plaintiff to such an extent as to influence their judgment in fixing the amount of damages. The plaintiff was before the jury, and having lost in the planing mill accident, years before, the index finger and the second and third fingers from it on the right hand, for which this defendant is in no way responsible, this,

with the injuries received to the left hand by the negligence of the defendant—that is, the loss of a thumb and a part of one of his other fingers—in our opinion, was calculated to unduly influence the jury in estimating the damages to the plaintiff by reason of the injuries to the left hand, for which the defendant was liable. Again, the plaintiff testified that he was unable, in his present condition, to get employment on any standard railroad. That, of course, had reference to the injuries to both hands.

After a most careful consideration of all the testimony regarding the injuries received by the plaintiff, we are of the opinion that the damages assessed by the jury were somewhat excessive, and that the plaintiff should remit $1,000 of such damages; however, such *remittitur* will only be required as of the date of the judgment in the trial court. Upon this *remittitur* as indicated being entered within ten days, the judgment of the trial court will be affirmed for four thousand dollars and bear interest from date of judgment in circuit court; otherwise, it will be reversed and remanded.

All concur.