EMMER STEWART HERRINGTON v. WILLIAM J. HOEY, Doing Business as HOEY CARTAGE COMPANY, and DON S. HOPKINS, Appellants.—139 S. W. (2d) 477.

Division Two, May 4, 1940.

*Roy Hamlin* and *Ben Ely* for appellants.

*Drain & Osburn* and *Gray Snyder* for respondent.

COOLEY, C.—Appeal by defendants from a judgment against them for $8500 in favor of plaintiff for personal injuries sustained by the latter in an automobile collision. Appellants, whom we may refer to as defendants, urge, among other contentions, that their demurrers to the evidence should have been sustained and verdicts directed for them, which contention necessitates a detailed statement of the facts.

Hopkins owned a "semi-trailer truck," consisting of tractor with truck body or "trailer", attached to and behind the tractor. The equipage is variously referred to in the record as "truck" or "trailer," the terms being used interchangeably and as meaning the same thing. It is claimed by plaintiff that Hopkins was Hoey's agent, acting within the scope of his authority, and that Hoey is liable under the doctrine of *respondeat superior*.

The accident occurred eight or nine miles west of Hannibal on Highway No. 36, an east and west highway, surfaced with an eighteen foot wide slab of concrete, with dirt shoulders on each side and having a black line running through the middle of the slab. Something less than a half mile east of the place of accident Highway 36 is joined by Highway No. 24 and from said junction the two highways are coincident westward to and beyond the place of the accident. The combined highway is referred to in the record as No. 36.

The accident occurred between 11:30 P. M. and midnight on May 25, 1936,—plaintiff said about 11:45 or 11:50 P. M. The truck had become stalled by reason of the breaking down of the left rear wheel of the trailer, making it impossible to move it, and was standing, headed west, with that left rear corner "jacked up," on the north half, its right side, of the slab, the left side of the trailer being five or six inches north of the black line, when plaintiff, driving west, alone, in a Ford coach automobile ran into it from behind, receiving the injuries for which he sued. He testified he was driving twelve to eighteen inches north of the black line.

Plaintiff, in his petition, charged negligence on the part of defendants in leaving the truck and trailer "parked" on the slab with no red light on the back thereof, and in leaving said equipage so parked with no torch or red light on the traveled portion of the road at least two hundred feet to the rear thereof. Defendants' amended answer was a general denial coupled with a plea of contributory negligence which, briefly and in substance, charged that plaintiff had insufficient lights on his car, failed to drive at a safe rate of speed under the existing conditions, failed to have his car under control,

failed to keep a lookout ahead, when by doing so he would timely have discovered the truck, and failed to have adequate brakes. There was another charge of (presumptive) negligence, viz., driving at an "unlawful" rate of speed, to-wit, in excess of twenty-five miles per hour for a distance of one-half mile. That charge was not proved and is not here urged. Neither did defendants offer any evidence in support of their charge of insufficient lights or brakes or failure to keep a lookout.

Plaintiff testified that his lights and brakes were in excellent condition and that his lights were burning; that as he neared the stalled truck he was driving between forty and forty-five miles per hour; that he was looking ahead, west; that there was one flare and only one behind the truck, it being "very dim and smoky" and being about sixteen feet behind the truck, on the dirt shoulder near the edge of the slab; that there was no light on the truck; that he first saw the flare when he was right at it and at the same time saw the truck and attempted to swerve to his left, having no time to apply his brakes, but it was "too late to do anything" and he ran into the rear end of the truck, knocking out the jack from under the left rear corner and letting the truck (or trailer) body fall on his car, smashing it and pinning him within.

Plaintiff further testified that there was a hill, the crest of which was about 125 feet east of the stalled truck, and from the crest of the hill there was a "deep grade" downward to and beyond where the truck stood; that on level ground he could see objects on the road ahead by his own lights, perhaps about 150 feet, but at the place in question, owing to the contour of the road, he could see only about fifty feet; that at the rate he was traveling and on the downgrade he could have stopped in about 25 or 30 feet; that he could not see the truck sooner than he did because "the back of the trailer was dirty and gray and it was the same color of the pavement and I couldn't tell it from the pavement." In this connection we state that a witness for plaintiff said that, as it appeared to him (that night), there was a tarpaulin over the trailer, and a witness for defendant, who knew the truck, said the trailer was not a solid body boxed in but was "an open top truck and instead of having a top built on top they had a canvas covering." Plaintiff said the weather was clear, meaning there was no fog.

Frank Palmer, for plaintiff, testified he, with a Mr. Nash, who was driving, came by the place from the east very soon after the collision. It appears witness and Nash were the first to arrive at the scene and helped Mr. Martin, who was with the truck, get plaintiff (then unconscious) out of his car and lay him on the shoulder of the road. Palmer said the night was dark (a fact not disputed), but he thought there was no fog; that he was awake and looking forward and saw no flare and no light on the rear of the truck.

Cecil Schwartz was called "about midnight" and came hurriedly with an ambulance, arriving at the scene of accident at, he thought, about 12:15 A. M. [Note—Witnesses generally were estimating the time.] Schwartz said he expected to find the "accident" at the junction of Highways 24 and 36, and from that point on drove slowly and carefully; that he did not remember seeing any flare east of the truck and noticed no lights burning on the back end of it, and believed he would have seen them had there been any; that he did not see the truck until within 25 feet of it; that it was "pretty foggy where the truck was," which was partly the reason he could not see it sooner, and there were fog pockets farther east "but it was not foggy the entire way" between the junction and where the truck was.

Clifford Hewitt arrived at the scene almost immediately after the ambulance. He said he noticed no fog, saw only one flare which was about 20 or 30 feet behind the truck, and no lights on the truck; that the light globes at the bottom on the rear end were broken but that there were five light globes at the top which were not broken but were not burning. He noticed no fog. He saw the flare when about 20 feet from it.

A number of other witnesses were called by plaintiff, two of whom came with Hewitt and others a little later, one or two about an hour and a half after the collision. None of them saw any lights burning on the rear of the trailer and none saw more than one flare. They varied in their estimates of the distance that flare was behind the trailer, the estimates varying from fourteen or sixteen feet to twenty or twenty-five feet. Several said it was on the shoulder, others did not state whether on the shoulder or the slab. None of those witnesses saw the flare till rather near it, one saying he was within fifteen feet. Some of them said the weather was clear, that is not foggy, others that there was a light fog where the truck was.

Two witnesses noted the license number of the truck, which was 19892.

Plaintiff introduced three exhibits, A, B and C. Exhibit A is a certified copy of interstate permit, No. T-2283, issued by the Public Service Commission to William J. Hoey, doing business as Hoey Cartage Company, in force May 25, 1936, authorizing him to operate in interstate commerce from points beyond to all points within Missouri and from all points within to points beyond Missouri. [It may be noted that the truck here involved was loaded with merchandise and was making a trip from Chicago, Illinois, to Kansas City, Missouri.]

Exhibit B consists of photostatic copies of two "travel orders." signed "Hoey Cartage Co. by Wm. J. Hoey." Exhibit C is a certified copy of Rule 56, General Order No. 27 of the Public Service Commission, relating to placing torches or red lights before and behind a stalled motor vehicle on the highway. These exhibits pertain particu-

larly to the question of Hoey's liability and will receive further notice and explanation in our consideration of that question.

Some evidence offered by defendants, that may have a bearing on the question of plaintiff's alleged contributory negligence, should be mentioned. Frank Martin, for defendant, testified that at the time of the accident he was and for some time had been employed by Hopkins as helper, to help load and unload, Hopkins doing all the driving—(Hopkins was driving when the truck broke down)—and that he had accompanied Hopkins on the trip and at the time of the accident had been left by Hopkins temporarily in charge of the stalled truck. He described the lights on the rear of the trailer thus: There were eight red lights in all—a bar of three at the bottom, in the middle, as low as the bed of the trailer as they could be placed and about five inches above them a row of five stretching "clear across the truck." He spoke of a "double light" on each rear corner, with globes and lenses so arranged that they showed green from in front and red from behind, which "protruded out" to the outer edges of the bumper. He said the impact of the collision "had crushed out lights so after they went out I repaired them immediately;" that first he and Nash got plaintiff out of his car and laid him on a car cushion on the shoulder; that there was a wire that had been broken by the collision and he had to "connect it back," which he did "right away," and as soon as he did that one light, "the red light on the left rear corner," went on. He said the other lights at the bottom were "mashed by the impact . . . the glass was all broken." He also testified that when darkness came that night he put out two flares behind the truck, one about 200 feet back on the slab near its edge and the other "at the left rear corner of the truck," about three feet from it and "just to the right of the black line," on the slab; that the latter was knocked over by the Ford car in the collision and he relit it and placed it "just behind the Ford car;" that all lights and flares were burning up to the time of the collision.

Illustrative of the conflicting testimony of witnesses and the differences in what they observed, two of defendants' witnesses who passed the stalled truck after dark that night, said they saw only one flare behind it. Two others said they saw *three*. Martin said he put out only two.

We cannot sustain appellants' contention that plaintiff was guilty of contributory negligence as matter of law. They present their argument on two hypotheses: First, that the night was clear and the visibility "good" (we presume they mean good for a dark night); second, that "there were fog pockets all along the road and one right at the scene of the accident which cut down the visibility materially." They do not elaborate the latter hypothesis but simply say that to drive 45 miles an hour under the circumstances was certainly contributory negligence as matter of law. On the first hypothesis they say

that at the place and under the circumstances testified to by plaintiff he "obviously" could have seen objects on the road as far as 75 feet ahead by his own lights; and then, by a rather nice mathematical calculation, *assuming* that he could have "reacted" to the sight of the truck and applied his brakes in half a second (there was no evidence on that point) they conclude he could have brought his car to a stop five feet back of the truck.

Appellants' argument is ingenius but we are not convinced that their conclusion is correct. Plaintiff explained why he could not see the truck sooner—its color resembling that of the pavement. The testimony of one witness that there was a tarpaulin over the trailer body and of another that it was of canvas indicates that its color may have resembled that of the pavement. The night was dark, and there may have been a fog pocket about the truck, not noticed by plaintiff. Some others did not notice the fog. Also, some witnesses did not notice the flare, others saw it only when quite near it. Schwartz, driving slowly and carefully and looking for the wreck, did not see the trailer till within 25 feet of it and did not see the flare. If the testimony of defendants' witness, Martin, is true there must have been at least one red light on the back of the trailer, the left rear corner light, burning when several of plaintiff's witnesses arrived, but none of plaintiff's witnesses saw any light on the trailer. In ruling a demurrer to the evidence the plaintiff must be given the benefit of all evidence in his favor, with such favorable inferences as can reasonably be drawn from facts proved. Considering all the facts and circumstances shown we think the question of plaintiff's contributory negligence was clearly for the jury.

*As to Defendants' negligence*:

We think there can be no doubt that actionable negligence on the part of Hopkins was shown. Hoey's liability depends upon whether or not Hopkins was his agent, acting within the scope of his authority. On this issue some further facts must be stated.

We have mentioned plaintiff's Exhibit A, being Public Service Commission permit No. T-2283 issued to Hoey authorizing him to operate in interstate business. That exhibit was introduced without objection. We have also referred to copies of travel orders shown in Exhibit B. C. W. Kinder, a highway patrolman with six years experience, stationed at Hannibal at the time of the accident, was called by defendants as a witness. He was asked on cross-examination, "What have you got to say about this truck being operated under a travel order on that night, tell the jury what a travel order is, if you know?" Defendants objected because "it is a compound question, incorporated two or three things." The objection was overruled and exceptions saved. Kinder testified: "A travel order is some emergency equipment being used by a man who has a permit of convenience and necessity under the laws of the State of Missouri.

A travel order is used when an emergency piece of equipment is used by that firm or corporation which allows that particular truck to operate for a period of twenty-four hours over the public highways of the State. That travel order must carry the license number, motor number and the date that he is to travel in that twenty-four hour period.'' Being asked who fills it out he said the law does not state who shall fill it out but ''The driver's name must be on there and the company which he operated under must be on there.'' He further testified that the Public Service Commission issues such travel orders in blank to motor carriers; that he saw Hopkins the night of the accident, shortly after it occurred, and Hopkins told him he was the driver of the truck in question. Witness said Hopkins was driving under a travel order issued by the Public Service Commission; that Hopkins had such travel order, which witness saw. He could not give all the details shown on the travel order, but said he knew it was O. K.; that it said it was issued under and by virtue of Hoey Cartage Company's permit and that it described the same truck which had been in the collision. [Witness had been at the scene of the collision very soon after it happened and had seen the truck.]

It appears that travel orders are in post card form and when used are filled out and returned by mail to the Public Service Commission. On May 26, 1936, the Commission received by mail the following filled out travel order:

> ''PUBLIC SERVICE COMMISSION OF MISSOURI
> EMERGENCY TRAVEL ORDER—
> MOTOR VEHICLE
> Certificate or Permit No. T-2283
> Maxium Load Capacity, 9 tons
> Make of Vehicle International Motor No. 15158
> State License Plate No. Tractor 19-892
> Trailer 7-305
> Issued for one day commencing 6 P. M. on date punched in margin and ending 6 P. M. following day.
> Name of driver Don Hopkins
> Owner of vehicle Same
> Signed Hoey Cartage Co.
> Name of Carrier
> By Wm. J. Hoey
> This order is not transferable and post card copy must be mailed on date of use.''
> (marginal figures omitted)

Exhibit B contained a copy of another filled out travel order received by the Commission June 10, 1936. It contains the same data as the one copied above, except that the truck owner's name is given as C. R. Baer. Hopkins is named as driver and it shows the same permit, motor and license numbers as the first order. We do not see the

relevancy of the second order, since the time was subsequent to the collision, unless the purpose was to show that Hopkins was still driving the same truck under Hoey's permit, notwithstanding an apparent change of ownership of the truck.

As to Kinder's testimony appellants now say it should not have been admitted because Kinder, being a layman, was not shown to have been qualified to testify about the travel order. No such objection or ground of objection was advanced in the trial court nor ruled upon by it, and, therefore, it may not now be successfully urged.

Defendants objected to the introduction of Exhibit B on the grounds that the photostatic copies of the travel orders were not the best evidence and that the "four" orders contained in the exhibit (we find but two in the record) were not shown to have any connection with each other. The copies were duly certified by the Secretary of the Public Service Commission, under his hand and the seal of the Commission, to be true copies of the "Original Travel Orders on file in this office" and that the first one was received in the office of the Commission on May 26, 1936, and the second on June 10, 1936. Section 5140, Revised Statutes 1929 (Mo. Stat. Ann., p. 6548), part of the Public Service Commission Law, provides that copies of all official documents and orders filed or deposited according to law in the office of the Commission, certified by a Commissioner or by the Secretary of the Commission to be true copies of the originals, under the official seal of the Commission, shall be evidence in like manner as the originals. Appellants do not in their brief here present the point that the travel orders contained in Exhibit B were not shown to have connection with each other, so we need not discuss that question. We think the certified copy of the first exhibit, at least, the one received by the Commission May 26th, was competent; and since no point is now made that the second was incompetent or prejudicial if the first was not we find no prejudicial error in the admission of the whole exhibit.

By Laws of Missouri, 1931, subdivision (d) of Section 5272, found at pages 313, any motor carrier using the public highways in interstate transportation of persons or property as a common carrier without having an interstate permit is subject to heavy penalties. Such motor carrier must therefore have such permit. By Section 5274, Laws Mo. 1931, page 314, it is made the duty of the Public Service Commission, in the exercise of the authority vested in it to license, regulate and supervise motor carriers, to promulgate and mail or deliver to each holder of a certificate of convenience and necessity, *interstate permit* or contract hauler's permit such safety rules and regulations as the Commission may deem necessary to govern and control their operation.

The permit under which the truck was being operated was issued to

Hoey. The travel order in possession of the driver and under which he was driving was issued under and by virtue of the permit. Said travel order described the truck in question. When filled out and returned to the Public Service Commission it appeared on its face to be signed by Hoey and there was no evidence to the contrary. We think the evidence authorized a finding that Hopkins was Hoey's agent, acting within the scope of his authority, therefore a finding of liability as against both defendants.

Defendants objected to the introduction of Exhibit C, Public Service Commission Rule No. 56, on the ground that it was outside the pleadings and not competent for any purpose. Said rule requires the placing of a torch or red light, if at night, 200 feet in front and one 200 feet at the rear of a stalled motor vehicle which cannot be moved, said signals to be placed on the pavement or traveled portion of the road. Respondent contends that the order was sufficiently pleaded and that in any event appellants' objection thereto was not sufficiently preserved and called to the attention of the trial court in the motion for new trial.

Respondent contends that the court will take judicial notice of said rule, it having been promulgated by the Commission pursuant to express statutory authority; appellants contra. Numerous cases are cited. We deem it unnecessary to decide this question. In their motion for new trial defendants alleged that the court erred in permitting plaintiff, over their objection, to introduce "the exhibits offered by plaintiff, which had not been properly identified and which were not proper matters of evidence." This seems to mean they were not proper matters of evidence because not properly identified. We find no other reference to the exhibits in the motion for new trial. Appellants seem tacitly to concede that said allegation of their motion did not sufficiently call the court's attention to the complaint that Rule 56 was not admissible because not sufficiently pleaded, for in their reply brief they do not dispute respondent's contention on that point, but say:

"Our position is that since these rules were not specifically pleaded in the petition, plaintiff could not recover on the ground of negligence in violating them and hence the submission of an assignment of negligence on those grounds was improper. *This boils down to error in giving instruction P.-1,* and the giving of that instruction was specifically assigned as error in the motion for new trial." (Italics ours.)

Plaintiff's Instruction 1, after hypothesizing other facts, the submission of which is not criticized, reads that if defendants left the truck and trailer parked north of the center line of the pavement headed west "without any red light *or other warning* on the back end thereof, *and* without placing a torch or red light on the traveled portion of said road at least 200 feet to the rear of said truck and trailer; and if you further find and believe from the evidence that on said

night the plaintiff was driving his automobile on the north side of the traveled portion of said road in a westerly direction, and towards said truck and trailer, and that plaintiff was driving his said automobile at said time and place in a careful and prudent manner and exercising the highest degree of care, and that while so driving his car, if you so find he was, his automobile was caused to and did collide with the back end of said truck and trailer by reason of the failure of the said Don S. Hopkins (while acting within the scope of his employment as the agent, employee and servant of said William J. Hoey, doing business as Hoey Cartage Company, if you so find and believe that he was), to have *a red light on the back end of said truck and trailer and* to have placed upon the traveled portion of said road at least 200 feet to the rear of said truck and trailer a red light or torch, and that as a result of said collision, if you find there was a collision, the plaintiff suffered personal injuries, then your verdict must be for the plaintiff.'' (Italics ours.)

Said instruction did not authorize a verdict for plaintiff upon a finding alone of the absence of a red light or torch behind the truck but required a finding of both that fact and the fact that there was no red light on the back end of the truck and trailer (a statutory requirement, Sec. 7778, R. S. 1929, Mo. Stat. Ann., p. 5222), before a verdict for plaintiff could be rendered. When several acts of negligence of the same character and leading to the same result are alleged and proof of one is sufficient to sustain a verdict for the plaintiff we do not think the defendant is prejudiced simply because another was submitted of which there may not have been sufficient or legal proof, if one which alone would have been sufficient to sustain the verdict was sufficiently proved and was required to be found and was found by the jury. [See Richardson v. St. Louis & Hannibal Ry. Co., 223 Mo. 325, Syl. 5 and page 341, 123 S. W. 22; Rigg v. Chicago, B. & Q. Railroad Co. (Mo.), 212 S. W. 878; Hamilton v. Standard Oil Co., 323 Mo. 531, 555, 19 S. W. (2d) 679, 688 (20-21).]

Appellants also criticize said Instruction 1 because of the use of the words ''or other warning'' following the words ''without any red light'' in the beginning of the portion we have quoted. They say that was broader than the pleadings or the evidence. The instruction, however, further required the jury to find that plaintiff was caused to and did collide with the truck by reason of defendants' failure ''to have a red light on the back end of said truck and trailer and to have placed upon the traveled portion of said road'' a red light or torch. Omitting intervening portions so as to bring the allegations relating to the red light together it would read that (if defendants left the truck) ''without any red light or other warning on the back end thereof . . . and his (plaintiff's) automobile was caused to and did collide with the back end of said truck and

trailer by reason of the failure . . . to have a red light on the back end of said truck and trailer . . .," etc.

Appellants cite on this point Primmer v. American Car & Foundry Co. (Mo. App.), 20 S. W. (2d) 587, and Pevesdorf v. Union Electric L. & P. Co., 333 Mo. 1155, 64 S. W. (2d) 939. We have examined those cases but do not think they sustain appellants' contention. We shall not take space to distinguish them. The judgment of the circuit court is affirmed. *Westhues, C.*, concurs; *Bohling, C., dubitante.*

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.