MAXINE GRUBB, by her next friend, MYRTLE GRUBB, Respondent, v. R. J. DUNHAM, Receiver of the METROPOLITAN STREET RAILWAY COMPANY, a Corporation, and KANSAS CITY RAILWAYS COMPANY, a Corporation, Appellants.

Kansas City Court of Appeals, May 25, 1919.

NEGLIGENCE: Proximate Cause: Excessive Speed. Unless the negligence complained of is the proximate cause of the injury there can be no recovery. Where the negligence alleged is the operation of a street car at an excessive rate of speed and the evidence shows that plaintiff was injured by being knocked under a moving car by persons in a crowd surging towards the car, no

causal connection between the excessive speed and the injury is proved, where all the evidence shows that plaintiff would have been injured if the car had been going at any rate of speed.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

REVERSED AND REMANDED.

*W. M. Bowker, Ingraham, Guthrie & Durham* for respondent.

*R. J. Higgins, E. E. Ball* and *Chas. N. Badler* for appellants.

BLAND, J.—Plaintiff recovered a verdict and judgment in the sum of twenty-five hundred dollars on account of the alleged negligence of defendants in running one of their cars over her, it being operated at the time at an excessive rate of speed.

The facts taken in their most favorable light to plaintiff show that defendants operated a street railway from Kansas City to Fairmount Park, an amusement park near that city. The car tracks made a loop in said park; cars going into the park proceed in a northerly direction, make the loop, and in returning leave in a southerly direction. Defendants' right of way in the park was fenced off from the park proper. After the cars made the loop they passed by a loading dock which occupied a space about forty feet long and twelve or fourteen feet in width, being paved with cinders and extending from the fence to defendants' tracks. This platform of cinders was on a level with the top of the car tracts. Passengers desiring to board cars came from the park through a turnstile, where defendants collected fares, to this loading dock.

About 5:00 o'clock on the afternoon of August 1, 1915, plaintiff, a child about nine years of age, who was accompanied by relatives, went through the turnstile, paid her fare and was standing upon the loading dock with a crowd of passengers waiting for a car. The crowd consisted of from 150 to 200 men, women and

children. The main part of the crowd was standing at the north end of the loading dock. One of defendants' cars being operated at a speed from twelve to fifteen miles per hour, came around the loop and passed the crowd standing upon the loading dock. It did not slacken its speed until it reached a point about the middle of the dock, and ran for some distance after reaching this point. It is impossible to tell from reading the evidence the exact distance but, evidently, it ran so as to practically clear, if not entirely clear, the loading dock, the motorman saying that he ran his car so far in order to permit another car coming up from behind to reach the loading place to take on passengers. When the car passed the crowd of people, a rush was made by them to obtain seats thereon, the crowd surging toward the car. As the car passed the crowd of people some men boarded the front end and standing on the step knocked down four or five people, who lay along the side of the car. Defendants' witnesses, Rowland and Stuberfield, testified that just before the car came to a stop a man rushed through the crowd, struck plaintiff, who was near the center of the car, knocked her over the people who had fallen, causing her foot to get upon the track and the car to run over her.

Plaintiff says that there is substantial evidence in the record that she was knocked down by the men who boarded the front end of the car or by the persons those men struck. There is nothing in the evidence of a substantial nature to bear out this contention of plaintiff. It is true that some of plaintiff's witnesses hazarded a guess that such might have been the case but their testimony on the point does not rise to the dignity of substantial evidence.

As a result of the injury she lost by amputation her big, second and third toes, and the end of the fourth toe, and the bones leading to them. The man who struck plaintiff boarded the rear end of the car and was lost in the crowd.

The evidence showed that plaintiff was knocked under the car at the center of the same and that the

Grubb v. Dunham.

front wheel of the rear trucks passed over her foot when the car .stopped. The length of the car was about fifty feet and the distance between the nearest wheels of the front and back trucks was from fifteen to twenty feet. The wheels of the car were about two feet in diameter. The car ran nearly its entire length after knocking down the people before it stopped. There was evidence that like crowds prior to this day, at the place in question, had acted similarly to this one. There is no claim that the motorman knew, or should have known, before the car was stopped, that plaintiff was knocked under the car. After plaintiff was struck it would have been impossible to have prevented the accident regardless of the rate of speed, as the motorman could not have seen plaintiff's predicament.

The petition was drawn upon the theory that plaintiff was a passenger at the time she was injured, the allegation of negligence being general in its terms. Plaintiff merely alleged that by reason of the carelessness and negligence of the defendants, their agents, servants and employees, she was thrown down and knocked under the front trucks of said car and was seriously and permanently injured. The case was submitted to the jury by plaintiff on the theory that the car was being operated at an excessive rate of speed under the circumstances. The jury were told in most general terms that if the car approached the stopping place and progressed to the point where it was stopped at a rate of speed "which was not reasonably safe under all the facts and circumstances in evidence, for the plaintiff, if you so find, and negligently failed to have said car under such control by the employees in charge thereof that they could stop the same within such distance as was reasonably safe for plaintiff under all the facts and circumstances in evidence, if you so find, then defendant was guilty of negligence toward plaintiff," and their verdict should be for plaintiff.

Defendants insist that there is no causal connection between the injury and the alleged excessive rate of

speed at which the car was being operated. While the allegation of negligence contained in the petition was most general, the case is submitted to us by both sides on but one theory, that is, that the injury was or was not caused by the negligent operation of the car at an excessive rate of speed. A showing that the car was operated at a rate of speed of from twelve to fifteen miles per hour past a mass of men, women and children, crowded into a small space against the car tracks, who defendants and its servants could have reasonably anticipated were anxious and ready to surge toward the car in order to gain seats, constituted sufficient facts from which a jury might find that the car was being operated at a negligent rate of speed. However, was there any causal connection between such an excessive rate of speed and the injury? Assuming that defendants and their servants could have reasonably anticipated, when they ran the car past the loading dock, that the crowd would surge toward the car just as this crowd did, and as a result of such surging some one might be pushed under the car and injured, nevertheless, we fail to see any causal connection between the excessive speed and the injury. This accident might have occurred if the car went past the loading dock at any rate of speed. The mere fact of excessive speed, without more, is not sufficient to support an action. A right of action therefore accrues to a person only when it appears that such excessive speed operates proximately to his injury. Therefore in order to support the action there must appear in the evidence something upon which the jury may base a conclusion, founded upon more than mere guess or speculation, that the injury would not have occurred if the car were running at a reasonable rate of speed. [Schmidt v. Transit Co., 140 Mo. App. 182, 187.]

There is nothing in this case beyond mere guess or conjecture tending to show that this accident would not have occurred just as it did had the car been running even at the slowest rate of speed. While there was evidence that a man knocked plaintiff over these people

already down and that she fell over them, one witness testifying, "she stumbled over that" (the people lying on the ground) "somewhat," there was no evidence in the case that the excessive speed of the car, causing the men standing on the front step to knock down four or five people, was the proximate cause of plaintiff's injury. There was no evidence that these men struck plaintiff. While defendants would be liable for their negligence in operating the car at an excessive rate of speed if that negligence contributed with that of the ·man who ran through the crowd and knocked plaintiff down (Schmidt v. Transit Co., supra; Stoltze v. United Rys. Co., 183 Mo. App. 304), yet the negligence of the defendants must contribute to the proximate cause of the injury. As stated in Battles v. Railway, 178 Mo. App. 596, 614; "In other words, a recovery cannot be had unless it appear that the injury sustained resulted proximately from the negligence complained of, and which is the basis of plaintiffs' action." Even if we assume that the negligent rate of speed naturally resulted in the knocking down of persons on the platform, such negligent rate of speed was an independent and interfering cause of the injury and not the proximate cause, the latter being the act of the man who knocked plaintiff down. [Glenn v. Street Rys. Co., 167 Mo. App. 109.] The injury was not the ordinary, natural or probable consequence of the excessive speed and, therefore, not the proximate result of such speed. [Henry v. Ry. Co., 76 Mo. 288, 294; Daneschocky v. Sieble, 195 Mo. App. 470; Bergfeld v. Dunham, 201 S. W. 640.]

It seems apparent that there was no causal connection shown between the operation of the car at a negligent rate of speed and plaintiff's injury. However, we will not reverse the case outright for the reason that it appears from the record that upon further development of the facts the plaintiff may be able to present a case wherein a causal connection between plaintiff's injury and a negligent operation of the car will appear.

The judgment is, therefore, reversed and the cause remanded. All concur.