THOMAS FOSTER, RESPONDENT, v. JAMES M. KURN AND JOHN G. LONSDALE, TRUSTEES OF THE ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANTS.—163 S. W. (2d) 133.

Kansas City Court of Appeals. May 4, 1942.

*Maurice G. Roberts, E. G. Nahler, Mitchel J. Henderson, Thos. E. Deacy* and *Henderson, Deacy, Henderson & Swofford* for appellants.

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for respondent.

1152

CAVE, J.—Plaintiff, Thomas Foster, sued defendants, James M. Kurn and John G. Lonsdale, Trustees of the "Frisco" Railway Company, for damages suffered in a crossing accident. Trial to a jury resulted in verdict for plaintiff in the amount of $7042 but the trial court ordered *remittitur* in the amount of $2042, which order plaintiff complied with. Defendants' motion for new trial was overruled and they have appealed. We shall refer to the parties as plaintiff and defendants.

The accident which forms the basis of this suit occurred November 11, 1934, at about 12:35 A. M., near Mindenmines, in Barton County. Suit was filed April 10, 1936, and trial was had in February, 1938, resulting in verdict and judgment for plaintiff in the sum of $2000. Appeal was prosecuted to this court. We reversed the judgment and remanded the cause. [Foster v. Kurn, 133 S. W. (2d) 1114.] Thereafter, defendants sought to remove the cause to the Supreme Court by writ of *certiorari* but that court denied the writ.

Defendants urge reversal of the judgment in the case at bar for the reasons, as they allege, that their demurrer, offered at the close of all of the evidence, should have been sustained because plaintiff did not make out a case for the jury on his pleaded and trial theory, and because plaintiff was guilty of contributory negligence as a matter of law.

We will state the facts in evidence that are deemed necessary for a disposition of the contention that plaintiff did not make a submissible case for the jury. This point was not presented on the former appeal and therefore not disposed of by our prior decision. Highway 160 runs east and west at a point near Mindenmines where it intersects defendants' line of railroad which, at that point, consists of a switch track and, at a point twenty-five feet, six inches west thereof, a main line track. These lines parallel and run from northeast to southwest, intersecting the highway at about a thirty-four degree angle. The highway is paved with concrete and the traveled portion thereof is twenty feet wide. At the crossing there are concrete aprons extending out on each side of the main pavement a distance of six feet, and running east to west a distance of thirty-five feet. The highway is level and straight from the crossing to a point about three-fourths mile east. There was no bell, wigwag, light, or other signal at the crossing. There was a flat car parked on the switch track, the south end of same extending out over the apron above mentioned to a point about even with the north line of the main pavement. There were electric lights on a steam shovel several hundred feet from the crossing, and the flat car was included within the rays of said lights, but the rays did not extend over the crossing.

Plaintiff had attended a dance and was enroute to his home at about 12:35 A. M., driving westward along said highway and approaching the above-mentioned crossing. He was thoroughly familiar with the crossing; having crossed it frequently, day and night, and had crossed it going east but a few hours before this.

The lights and brakes on his car were in good condition and he was driving at about twenty-five miles per hour. His windows were down very slightly. There was a corn crib and other obstructions located on the north side of the road, near the crossing, which obstructed the view to the northeast, along the track. The view to the south and west was unobstructed.

When he reached a point about 200 feet east of the crossing he saw the flat car with the end thereof protruding out over the concrete apron. Because of the angle at which the track crossed the road it was difficult to see down the track in that direction. He slowed his car to a speed of about eighteen or twenty miles per hour and pulled his car to the south, so that the wheels straddled the center line. He testified that the flat car was not there when he had driven over the crossing earlier that night, and that he was apprehensive of danger from that direction because of the presence of the flat car. He thus approached the crossing from the east, looking alternately to the north and south until he was about 100 feet from the track, from which point onward he continued looking to the north until the front wheels of his car were about on the east rail of the switch track, when he again looked to the south and saw a black bulk looming in front of him. He could not say whether or not it was moving. He felt his automobile collide with an object, and felt it move toward the north. He then lost consciousness.

He testified that he did not see any train on the track to the south prior to the collision; that he saw no head light; that no bell was rung nor whistle sounded, and that there was no light, wigwag bell or other signal at the crossing.

Mr. Vanterpotte testified that he and his wife were in their car, driving about 200 to 250 feet behind plaintiff at the time of the accident; that there was no other car or obstruction between them and plaintiff's car when he suddenly observed the tail light on plaintiff's car go out; that he was then about 200 or 250 feet east of plaintiff; that immediately afterwards he saw a box car on the crossing and that it moved just a "flash" after he saw it; that he parked his car about 120 to 140 feet from the crossing and walked down there; that the front part of plaintiff's car was wedged under defendants' box car, which box car was then stationary; that the left front wheel of the automobile was about on the center line of the pavement, the right rear wheel on the center line, the left rear wheel about four feet, eight inches south of the center line, and the car was setting at an angle facing the northwest; that as he approached the scene he saw no light or warning signal of any kind at the crossing; that there was no light on the north end of the box car; that he heard no bell or whistle; and that the north end of the box car was about four feet south of the south end of the flat car, the latter being located about as before described. He was corroborated by Mrs. Vanterpotte.

Witnesses Farrington and Evans, who arrived after the accident and did not see it, also corroborated the Vanterpottes regarding the situation of the automobile with reference to the roadway and the box car. According to their testimony there was no crossing signal of any kind at the crossing, and no flagman; but a man with a lantern approached along the east side of the train after they arrived.

Defendants offered evidence to the effect that one of their trains had arrived at Mindenmines shortly prior to the happening of the accident and had engaged in a switching operation near and across the crossing in question. The train crew had left the caboose and three cars, including the flat car hereinbefore mentioned, on the main line, north of the crossing. They took the engine and coupled onto four box cars, including the one with which plaintiff collided, and backed them northeast, intending to connect them with the flat car. The evidence was further to the effect that the engine bell was ringing but that there was no light on the north end of the box car; that the cars were being moved at a rate of speed of about two miles per hour when the box car furthest north approached and entered the crossing; that a member of the crew was at the crossing with a lighted lantern to "protect" the crossing. Witness Beard, testifying for defendants, stated that plaintiff continued to approach after the box car had entered the crossing; that when the north end of the box car was about three feet north of the center line of the highway witness gave a stop signal to the engineer and that the movement was stopped immediately, the north end of the box car coming to rest at about the north edge of the main pavement; that plaintiff's automobile was about fifty feet to the east of the box car when the latter came to a stop; that the automobile "swung to the south" and then "it hit right under the door" of the box car while the latter was standing still; that the automobile swung "to the southwest."

Plaintiff pleaded and tried his case on the theory that the collision occurred while defendants were backing a box car across a public crossing and while said box car was in motion. Defendants contend that the evidence fails to establish the fact that the box car was in motion at the time the collision occurred and that, therefore, plaintiff cannot recover.

It is true that plaintiff testified that he could not say that the car was moving when his automobile collided with it; but he did say that after the collision he felt his car move to the north, which was the direction the box car had been proceeding (at some time), prior to the collision, according to defendants' evidence. Witness Vanterpotte first testified that he saw the box car in motion immediately after the tail light on the automobile went out. He testified on cross-examination, later, that he saw the box car in motion about the time he pulled in to park. Still later he said the box car appeared to be standing still immediately after the impact, but that he saw it move after he saw it standing still. His testimony on the part is very confusing. Defendants' witness Beard testified that when the automobile was less than fifty feet from the box car it "swung to the south" or "southwest." Defendants offered hospital records and other evidence to the effect that plaintiff had stated, after the accident, that he

swerved his car in an effort to avoid the accident. The evidence is all to the effect that the automobile, after the accident and while both it and the box car were at rest, was setting at an angle, headed northwest with the front wheel on the center line of the pavment, the rear right wheel about on the center line. The rear left wheel was setting the width of the automobile to the south thereof. These circumstances constituted facts from which a jury could infer that the automobile was south of the center line of the pavement, and was headed, and was being driven, toward the southwest when the collision occurred, which is in harmony with Beard's testimony. If so, it is difficult to see how it could have gotten into the position that it occupied after the accident was over unless it was pulled into such position by the moving box car, since there is no substantial evidence in the record tending to prove that the car was ever started up and moved after the collision; and that these facts the jury was entitled to infer that the box car was moving when the collision occurred. "Causal connection need not be shown by direct and positive evidence, but may be shown by other facts and circumstances and, in the consideration of a demurrer to the evidence, every reasonable inference should be indulged in favor of plaintiff." [State ex rel. Haid, 325 Mo. 107, 28 S. W. (2d) 97, l. c. 102.] "It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusioh therefrom may be fairly inferred." [Frese v. Wells, 40 S. W. (2d) 652, l. c. 654.] "The facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions as common sense dictates deduced therefrom." [Anderson v. Asphalt Distributing Co., 55 S. W. (2d) 688, l. c., 693.] Such an inference as is above suggested supports, and does not contradict, plaintiff's theory of the case.

Defendants contend that in order to find enough evidence to support its finding that the box car was moving at the time the collision occurred the jury must have relied, in part, on evidence offered by defendants. It was proper for the jury to do that. "Plaintiff is entitled to have the benefit of defendant's testimony to help out her own case so far as it does not involve a repudiation of her petition and general trial theory. And the jury may believe all of his testimony or may accept it in part and reject it in part just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances in the case." [Pabst v. Armbruster, 91 S. W. (2d) 652, 657.] The jury was entitled to believe defendants' evidence to the effect that the box car was pushed upon the crossing just prior to the collision and to refuse to believe its evidence to the effect that the car had come to rest at a time when plaintiff's automobile was fifty or more feet from the track; to believe its evidence to the effect that the box car had no light on it and to refuse to believe that a flagman was at the crossing waving a lantern as the car entered

the crossing; and to believe that the car was pushed onto the crossing but was not required to believe that it traveled at the rate of speed claimed by defendants. [Hinds v. Chicago R. & Q. Ry. Co., 85 S. W. (2d) 165, l. c. 169.] This would not violate the rule that plaintiff cannot piece out his case with defendants' evidence which is contradictory of plaintiff's theory of the case.

The evidence, when viewed in the light most favorable to plaintiff, as it must be done when ruling a demurrer, was sufficient to justify the jury in finding the following facts: Defendants backed the car on and across the crossing in the nighttime with no light on said car; there was no light or warning signal of any kind at the crossing; there was no flagman at the crossing; no bell was rung or whistle sounded at or prior to the time the car entered the crossing; and defendants' box car, while being pushed across this public crossing collided with plaintiff's automobile. We think this made a *prima facie* case on behalf of plaintiff. [Toeneboehn v. St. Louis-San Francisco R. Co., 298 S. W. 795, l. c. 802, 317 Mo. 1096, l. c. 1112.]

It is defendants' theory that the box car was stationary and setting across the highway and was in that position when plaintiff was at a point fifty feet east of it, at which time plaintiff could have stopped his car. Defendants contend that the physical facts are such that they preclude plaintiff's recovery. There is much contradictory evidence in this case and we are unable to say that the physical facts are such that the box car ''must'' have been inside the crossing, as defendants contend, and in plain sight of plaintiff at all times. The whole question was one for the jury.

Having made a *prima facie* case plaintiff was entitled to have it submitted to the jury unless, in making his case, his evidence also established that he was guilty of contributory negligence as a matter of law. [Toeneboehn v. San Francisco R. Co., *supra.*] Unless plaintiff's own evidence proved that he was guilty of contributory negligence as a matter of law the case could not have been taken from the jury. The defense of contributory negligence is an affirmative defense and the burden of its proof rested with the defendants who relied on it. This is true because the jury, and not the court, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. [Peterson v. Chicago & Alton Ry. Co., 265 Mo. 462, l. c. 479, 178 S. W. 182.]

In our former opinion in this case, Foster v. Kurn et al., *supra,* Judge SHAIN thoroughly considered the question of contributory negligence and we held that it was one for the jury. The defendants admit that the pleadings and evidence in the case at bar are not materially different, on this question, than they were in the former record. ''On a second appeal or writ of error on the same facts and pleadings the appellate court will not notice questions determined in the previous decision. All such are *res adjudicata* and closed.''

[Gracey v. St. Louis, 221 Mo. 1, l. c. 5; State of Kansas ex rel. v. United States Fidelity and Guaranty Company, 40 S. W. (2d) 1050, l. c. 1052.] We recognize the fact that the above rule is subject to the right of the court to correct any errors it may have committed in the former decision, Poe v. Illinois Central Ry. Co., 99 S. W. (2d) 82, l. c. 83; but we have read the record and are not inclined to criticize our former opinion as to this point. The Supreme Court denied *writ of certiorari* on the former opinion although defendants strongly urged contributory negligence as a ground in support of their application for said writ. We rule that the question of contributory negligence in the case at bar was one for the jury and not for the court.

Defendants next contend that plaintiff's Instruction No. 1 is erroneous for the reason it was broader than the pleadings, . . . and imposed a greater duty and burden on the defendants than the law itself imposes. The instruction submitted, in the conjunctive, but two grounds of negligence: (a) that the defendants negligently propelled a train across the highway without giving the statutory warning by whistle or bell of the approach of the train; (b) and negligently failed to have an agent or servant stationed at the crossing *with a lighted lantern* to protect and warn vehicular traffic of the approach of the moving train. It is the contention of the defendants that neither the petition nor the evidence warranted the submission to the jury of the question of their failure to have a flagman *with a lighted lantern* on the crossing. Plaintiff first argues that because the two grounds of negligence were submitted in the conjunctive, and that the petition and evidence were sufficient to support the charge of failure to warn by bell or whistle, as required by statute, that, therefore, he was entitled to recover on that issue alone, and by annexing in the conjunctive an additional ground was merely assuming as unnecessary burden by plaintiff and, therefore, is not reversible error.

Plaintiff's petition alleged several grounds of negligence. Those pertinent here may be stated as follows: Negligent failure in warning of the approach of the train by blowing of the whistle or ringing of the bell; negligent failure to give a statutory warning by bell or whistle; negligent violation of an alleged custom and practice to warn traffic on the highway by flagging the crossing; negligent violation of rules 103 and 103-A of defendants in failing to have a member of the train crew protecting the crossing from a ground position while the train was being shifted over and across a public crossing; negligently pushing the train over the crossing without lights on the rear end of the car first reaching the highway. The petition does not allege that it was the duty of the defendants under any custom, rule of the company, or at law, to have a flagman *with a lighted lantern* at the crossing to warn travelers on the highway of the train's ap-

proach. It therefore follows the submission of such an issue was broader than the petition; but the question is, does this require a reversal of the case?

The evidence was uncontradicted, in fact, defendants admitted that the whistle was not sounded; but the evidence was conflicting concerning the ringing of the bell and, the jury resolved that question favorably to the plaintiff and we will not disturb it since there is substantial evidence to support such finding. The defendants were not required to give a warning by both sounding the bell and blowing the whistle, but could warn of the train's approach by either method. [Sec. 5213, R. S. Mo. 1939; Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S. W. (2d) 918.] The evidence was also undisputed that there was no light on the rear end of the train as it approached the crossing and that there was no gate, reflector or electric bell at the crossing to warn plaintiff of the approach of the train. Plaintiff's evidence was to the effect that there was no flagman at or on the crossing giving any signal or warning of the train's approach, while defendants' evidence was that there was a flagman on the crossing, with a lighted lantern, giving the engineer certain signals in the backing of the train, and also signaling traffic on the highway of the train's approach.

Omitting that part of plaintiff's Instruction No. 1, which required defendants to have a flagman on the crossing with a lighted lantern, the material remaining part of the instruction submits the question of failure to warn by bell or whistle in the following language: ". . . and if you further find that in making said switching operation and as the cars attached to the engine approached highway No. 160 from the southwest and were traveling in a northeasterly direction on said tracks, no warning by whistle or bell was given of the approach of said engine and cars and of the intention of the agents, servants and employees of defendants to propel said engine and cars across said highway No. 160 at the place aforesaid, . . . and if you further find that as a direct result of the failure of defendants to give a warning by whistle or bell of the approach of said train, if you find they did so fail . . . plaintiff's automobile was, as a direct result of such failures, if so, caused to come into violent collision with a box car then and there operated by defendants over said highway No. 160 at the time and place mentioned in evidence, and that as a direct result of the collision plaintiff was injured, and his automobile was damaged, if you so find, . . . then your verdict should be for the plaintiff and against the defendants.''

In their last reply brief defendants concede that the instruction submitted the question of negligent failure to give the statutory warning by whistle or bell, and state their contention in this manner: ''In the case at bar a charge of negligence which was not pleaded, namely, the failure to have an employee at the crossing with a lighted lantern

was submitted in the conjunctive with a pleaded charge of negligence, namely, a failure to give the statutory warning by whistle or bell. None of the cases cited by the respondent hold that an unpleaded charge of negligence can properly be submitted in the conjunctive with a pleaded charge of negligence.''

We agree that the instruction properly and sufficiently submits the question of statutory negligence in failure to warn by bell or whistle, Herrington v. Hoey, 345 Mo. 1108, 139 S. W. (2d) 477; but we do not agree that the mere fact that plaintiff annexed, in the conjunctive, another ground of negligence, which was broader than the pleadings, would constitute reversible error.   In the case of Guthrie v. City of St. Charles, 152 S. W. (2d) 91, l. c. 98-99, the Supreme Court, en banc, in discussing an instruction criticized for the same reason this instruction is criticized, ruled the point in this language: ''This was broader than the petition and left the jury to rove on that issue.  Still we think the error was not reversible because the issue was submitted in the conjunctive with the issue about the open W. P. A. manhole. The respondent was entitled to recover on the latter alone, and therefore assumed an unnecessary burden in annexing the other issue. [Tash v. St. L.-S. F. Ry. Co., 335 Mo. 1148, 1164, 76 S. W. (2d) 690, 698 (9).]''

To the same effect is the ruling of the Supreme Court in the case of Herrington v. Hoey, supra; and State ex rel. Kansas City Gas Co. v. Shain, 132 S. W. (2d) 1015, l. c. 1017.   We have examined the case of State ex rel. Central Coal & Coke Co. v. Ellison et al., 270 Mo. 645, l. c. 653, relied on by defendants, but we do not believe the broad general principle laid down in the case is applicable here because the court was not discussing the question of submission, in the conjunctive, of two grounds of negligence, one of which was supported by the petition and evidence, and the other not.   In fact, that court, in a later case, held that the language used in the Ellison case, supra, was too broad.   [Talbert v. Chicago, R. I. & P. R. Co., 321 Mo. 1080, 15 S. W. (2d) 762.]   We have also carefully examined the opinion in the case of State ex rel. Anderson v. Hostetter, 140 S. W. (2d) 21, and have concluded that that case is not in point because the court there was discussing whether the petition could be considered amended after verdict because certain evidence came in without objection and did not directly discuss the question which we now have under consideration.   Plaintiff does contend that it was proper to include in his Instruction No. 1 the submission of the failure of the defendants to have a flagman at the crossing with a lighted lantern, because evidence concerning that fact came into the case many times during the trial, without objection, and that it was the theory of the defendants that the flagman was at the crossing with a lighted lantern; however, we will not lengthen the opinion by a discussion of that question because we believe our conclusion herein is fully supported, and in fact is re-

quired, by the latest opinion of the Supreme Court, in banc, as announced in Guthrie v. City of St. Charles, *supra.*

Defendants next contend that the verdict of the jury was and is excessive. The jury returned a verdict in favor of the plaintiff in the sum of $7042, and the trial court ordered a *remittitur* of $2042, which was made by the plaintiff, and judgment entered for $5000. In determining whether or not the verdict was excessive, the court must consider all facts shown by the evidence most favorable to plaintiff. "Plaintiff's evidence must be accepted as true and all reasonable inferences therefrom must be allowed. Every case must be considered in view of the evidence in the particular case." [Becker v. Aschen, 344 Mo. 1107, 131 S. W. (2d) 533, l. c. 541; see also Gieseking v. Litchfield & Madison Ry. Co., 344 Mo. 672, 127 S. W. (2d) 700.] With such principle in mind, we examine the evidence of plaintiff's injuries.

At the time of the collision, plaintiff was rendered unconscious for an hour and a half, and suffered a severe concussion. Observation made by one witness at the scene of the accident was that "his nose was split wide open and his right ear was cut." It was later determined that his third, fourth, fifth and sixth ribs were fractured with an overlapping of the second rib and an involvement of the intercostal nerve. Such an injury would cause severe pain. The nasal bone was fractured, leaving a deformity of the nasal septum, with an obstruction on the left side of the nose which would interfere with his breathing unless such condition was removed by an operation. While in the hospital, he contracted pneumonia as a result of his injuries. It was also in evidence that he had suffered a severe sacro-iliac sprain, and a lumbosacral strain, and that such condition would be chronic and permanent. The evidence was conflicting as to the cause of this condition, but we cannot say there was no substantial evidence to support plaintiff's contention that such back injury was due to the accident. He was confined in the hospital for seventeen days and after returning to his home was in bed for two weeks, and then was up and down for an additional two weeks. About two months after the accident, he did some light work, such as flagging traffic on a highway construction project for two or three weeks, and complained of suffering pain in his back and chest at that time. After that work was completed, he did light work and odd jobs about the farm on which he lived, but did not go back to regular employment until about a year after the injury, when he went to work mining coal. During all that time and until the date of the trial, some five and a half years after the accident, he complained of pain in his chest and particularly in the lower part of his back, and of headaches and dizzy spells. He has not been able to work regularly since the accident and said he finally had to give up digging coal and for about two years had been doing farm work. He was still wearing a belt to support his back at the time of the trial.

1162

There is little dispute about the plaintiff, receiving a severe concussion at the time of the accident, and being rendered unconscious for an hour to an hour and a half; that his nose was fractured, leaving a permanent obstruction; that he was ill with pneumonia as a result of the accident; that four ribs were broken, together with other bruises and less severe injuries. The controversial issue, concerning his injuries related to the conditions found in the sacro-iliac region, and while the evidence was conflicting, there was substantial evidence to support plaintiff's contention that the conditions found in his back were due to the accident.

We conclude that the injuries received by the plaintiff, and supported by substantial evidence, would justify a judgment in the sum rendered in this case. We are inclined to defer to the sound judgment and discretion of the trial court who heard the evidence and saw the witnesses and after verdict, reduced the verdict to $5000; he was in much better position to judge the weight of the evidence than are we.

There are many cases in the reports sustaining judgments for amounts equal to and larger than the judgment in this case for injuries to the sacro-iliac region. Some of such cases are Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903, and cases there cited; Zeller v. Wolff-Wilson Drug Co., 51 S. W. (2d) 881; Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. (2d) 1071. The defendants do not call to our attention any case where the appellate court has held a judgment to be excessive where the amount and injuries are comparable with the situation in this case. We conclude that we would not be justified in ordering a further *remittitur* herein.

Finding no reversible error, it follows that the judgment must be affirmed. It is so ordered. All concur.