248 S.W.2d 870 (1952)
BAKER
v.
NORRIS.
No. 21617.
Kansas City Court of Appeals, Missouri.
May 5, 1952.
*871 Wherritt & Sevier, Alan F. Wherritt and Robert F. Sevier, all of Liberty, for appellant.
White & Hall, Kansas City, Wilson D. Hill, Richmond, for respondent.
BROADDUS, Presiding Judge.
This is an action for personal injuries resulting from a collision between plaintiff's automobile and a truck operated by the defendant at nighttime on State Highway E in Ray County, Missouri. Trial to a jury resulted in a verdict and judgment for the plaintiff in the amount of $6,000, from which the defendant appealed.
The petition alleged several acts of specific negligence, and the cause was submitted to the jury on defendant's failure to keep to the right of the center of the highway while making a right-hand turn, and operating the truck on the wrong side of the highway and not as near the right-hand side as practicable, or that he operated the truck during the nighttime without a red light on the rear end thereof.
The collision occurred at night on State Highway E which runs in an east and west direction and is a hard surfaced blacktop road, the traveled portion of which is 25 to 27 feet in width with a 2-foot gravel shoulder on either side. Defendant was driving his truck westward and intended to turn to the right onto a gravel county road leading north from Highway E at a point 12 to 15 feet east of a bridge over Panther Creek. Plaintiff was driving his automobile westward along the same highway *872 and the collision occurred at the point where the county gravel road extends north from Highway E.
Plaintiff testified that he was operating his car about 35 or 40 miles an hour on the right-hand side with the headlights on when he suddenly discovered defendant's unlighted truck about 35 to 40 feet ahead of him and crossways in the road, blocking the entire right side of Highway E, and extending 4 to 5 feet to the left or south side of the center of said highway; he sounded the horn and applied the brakes and veered to the left across the south side of the highway in an effort to go behind the truck, and about that time he discovered that the truck was backing up, so he angled further to the left until the left wheels were on the gravel shoulder; and that when his car was at the rear of the truck the left corner of the truck struck the right side of plaintiff's car, causing him to lose control, and he went down the embankment into the creek. The car turned over and he sustained serious injuries.
This is a general statement of the situation. Other testimony will be referred to as we discuss defendant's assignments of error.
Defendant contends that his motion for a directed verdict, at the close of all the evidence, should have been sustained because: (a) plaintiff's evidence was so improbable and impossible as to be contrary to known physical facts and therefore was without probative force; and (b) that plaintiff was guilty of contributory negligence as a matter of law. In support of proposition (a) defendant cites Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378; State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Callanan v. United Railways Co., Mo.App., 263 S.W. 443; Nowlin v. Kansas City Public Service Co., Mo.App., 58 S.W.2d 324; and in support of proposition (b) he cites Grubb v. Dunham, 201 Mo.App. 504, 214 S.W. 256; Bowers v. Columbia Terminal Co., Mo.App., 213 S.W.2d 663; O'Bauer v. Katz Drug Co., Mo.App., 49 S.W.2d 1065.
The general rule is that testimony which is contrary to physical facts or known physical law or general knowledge must be rejected as without probative force. Defendant argues that this general rule governs the instant case. The evidence to which he directs our attention is to the effect that plaintiff testified he was operating his car about 35 or 40 miles an hour; that the headlights were on and would disclose an object on the highway 150 to 200 feet ahead of him; that his car was in good mechanical condition, and when traveling at a speed of 35 to 40 miles an hour he could stop it within 60 or 70 feet; that he did not see the defendant's truck until he was within 35 to 40 feet of it, and at that time the truck appeared to be backing across the highway 5 to 10 miles an hour; and that there were 13½ feet of the traveled portion of the highway on the left side for the plaintiff to pass behind the truck. Defendant presents an argument based upon the speed of the truck and of plaintiff's car and their respective positions, and thereby seeks to demonstrate that plaintiff's testimony is unbelievable because, if it were true, he would have passed the truck be fore it could be backed into his path. In reaching this conclusion defendant overlooks three important elements: (a) that plaintiff's testimony as to the speed and the location of the vehicles at a given time was a mere estimate; (b) that plaintiff, when he saw the truck, immediately applied the brakes and reduced the speed as he attempted to pass the truck; and (c) that there was no evidence of "reaction time" which defendant uses in making his calculations. Considering these elements, together with all other facts and surrounding circumstances, we are unwilling to say that the plaintiff's testimony is contrary to the physical facts and of no probative value.
A reading of the cases cited by defendant will clearly distinguish them from the instant case. In the Rohmann case the accident occurred in daylight, on a street which was under repair, and with a large amount of dirt, stones and other obstructions thereon. The court said that the condition was so perfectly obvious and apparent that anyone who looked must be held to have seen what was in plain view. That is not the situation in this case, as we will *873 further demonstrate in our discussion of the question of contributory negligence.
On the issue of contributory negligence, defendant contends that even if he was negligent in backing his truck across the highway without a tail light, nevertheless plaintiff was also negligent, as a matter of law, in not seeing the truck in time to have stopped or avoided the collision. This argument is based on plaintiff's testimony that his headlights would reveal an object in front of him for a distance of 150 to 200 feet and, therefore, plaintiff should have seen the truck, had he been looking, in ample time to have avoided the collision. This argument overlooks the testimony that the highway was black top and that at a point about where the truck was located there was an incline to the west; that the truck was old (1940 model) and had originally been painted black with an orange stripe about 6 inches wide along the top of the bed, which was only 28 inches high; that the dark color of the truck blended with the black top of the highway, and that there were no lights on it. Under such circumstances, we think the question of plaintiff's contributory negligence was for the jury. For a discussion of a similar set of facts, see Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299; McGrory v. Thurnau, Mo.App., 84 S.W.2d 147.
Defendant next contends that the court erred in giving plaintiff's Instruction No. 1 because it submits as a ground of negligence an element upon which there was no proof. The part of the instruction complained of reads as follows: " * * * and that defendant, was operating the truck on said highway and failed to keep to the right of the center of said highway while making a right-hand turn, if so, and operated said truck on the wrong side of said highway and not as close to the right-hand side as practicable, if so, or operated the truck during the nighttime without a red light on the rear end, if so, and that in the respects above submitted he was negligent * * *." (Italics ours.) It is argued that this instruction is so worded as to be in the disjunctive and that there are in reality two parts of the instruction with reference to the alleged acts of negligence which were submitted to the jury, these two parts being: (1) did defendant operate his truck on the wrong side of the road and not as close to the right-hand side while making a right-hand turn, or (2) did the defendant operate the truck at night without a red light on the rear? Defendant concedes that there was sufficient evidence to submit the issue of not having a tail light. His complaint is that there was no evidence that he was on the wrong side of the road "while making a right-hand turn", and, relying upon the rule that when several issues of negligence are submitted in the disjunctive there must be evidence to sustain each of the issues submitted, he says the instruction is erroneous. Defendant was on the way to his home which was located on the gravel road not far from the highway. Plaintiff produced evidence to the effect that at the time of the collision defendant's truck was headed to the right into the gravel road and blocked all of the right-hand side of the highway and extended some 4 or 5 feet to the left of the center line of the highway. Defendant testified: "I was turning off into this gravel road." Plaintiff was entitled to the benefit of defendant's admission that he was making a right-hand turn without being bound by his further claim that he was on the right-hand side of the highway. As stated by this court in Foster v. Kurn, 236 Mo.App. 1149, 163 S.W.2d 133, loc. cit. 136:
"Defendants contend that in order to find enough evidence to support its finding that the box car was moving at the time the collision occurred the jury must have relied, in part, on evidence offered by defendants. It was proper for the jury to do that. `Plaintiff is entitled to have the benefit of defendant's testimony to help out her own case so far as it does not involve a repudiation of her petition and general trial theory. And the jury may believe all of his testimony or may accept it in part and reject it in part just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances *874 in the case.' Pabst v. Armbruster, Mo.App., 91 S.W.2d 652, 657."
In our opinion the court did not err in giving the instruction.
Defendant also assigns error in the admission of certain testimony. Dr. Gay treated plaintiff for his injuries, and sometime after the accident had taken x-rays; and about 17 months later he sent the plaintiff to a specialist to have x-rays made, which was done, and the expert made a written report to Dr. Gay. When plaintiff undertook to question Dr. Gay about this report the court very properly sustained an objection, but permitted Dr. Gay to testify concerning his own findings, as shown by the x-rays. This was proper. There was no objection made questioning the competency of Dr. Gay to read and interpret the x-rays, and it is not contended here that he was incompetent to do so.
It is also contended that the court erred in permitting plaintiff to answer this question: "Well, tell the jury how far you were if you recall, when you were first able to distinguish the outline of the truck against the background * * *." Objection was made because the question was leading and suggestive and repetitious, and that the words "against the background" were the words of plaintiff's attorney and not plaintiff's. The objection was overruled, and the witness answered: "It was about 35 or 40 feet." There had been considerable testimony concerning the appearance of the blacktop road and the truck; that they blended and made it more difficult to see the truck under the conditions existing than if there had been some object of a lighter color. We think there was no prejudicial error in permitting the witness to answer that question when all the evidence preceding it is considered.
Defendant also contends that the verdict for $6,000 is excessive. The evidence shows that plaintiff received a severe concussion and was unconscious for several hours after the accident, and that this unconscious condition returned at different times during the next several days; that the spinous processes of the seventh cervical and the first thoracic vertebrae were fractured and dislocated; that he had a fracture of the pelvis, and had sustained a severe nervous shock. He remained in the hospital six days and was then returned to his home, against the advice of his physicians. It was the doctor's opinion that the plaintiff was not mentally capable of deciding whether he should leave the hospital. The plaintiff had no recollection of being taken home, and when the doctor visited him there he found several persons holding him in bed. The record indicates that there was some unpleasantness between the doctor and plaintiff's "in-laws." Plaintiff visited the doctor at his office at frequent intervals for consultation and for prescriptions for medicines. X-rays taken about 18 months after the accident disclosed that the spinous processes had not healed and reunited with the vertebrae. It was the doctor's opinion that further improvement in this regard was very doubtful; and that such condition would cause pain in shoulder, neck, head and arm; that the pelvic injury had not completely healed: "He doesn't have the same agility, doesn't have the ability to move around, as normally as an individual who hasn't sustained that type of fracture."
Plaintiff testified that since the accident he cannot bend or lift an object of weight or do any physical labor requiring bending or lifting; that he has shooting pains in his neck and back, and on occasions blacks out; that he cannot lift his left arm to normal height, and at times there is a loss of feeling in the hand and arm which causes him to drop articles; that he has been unable to sleep well at night and has lost 33 pounds; that he remained home seven weeks after leaving the hospital, and that when he returned to his work he was unable to perform his former duties and was assigned to a lighter task, which required no lifting or bending. He claims that his eyesight is affected and that glasses were prescribed, but they have not helped his vision or his headaches. When he returned to his employment and assigned new and lighter duties, he did not suffer any loss in wages and had received whatever increases in pay that had been given other employees doing similar work.
*875 Defendant vigorously assails the testimony of the doctor, and charges that he was prejudiced in favor of the plaintiff. This contention is based largely on academic discussions engaged in by the doctor in answer to some questions wherein he stated that certain results may or might follow from the injuries plaintiff received. There were no objections made to many of these answers and, when they were made, the court usually sustained them. There is no assignment of error predicated on the admission of such academic answers. When all the evidence concerning plaintiff's injuries is considered, we are unwilling to hold that the amount allowed is excessive. Touching this question, it was recently said: " * * * consideration should be given to economic conditions and the current purchasing power of the dollar at the time the verdict is rendered; that plaintiff is entitled to reasonable compensation; that there is no ground for appellate interference except where the injustice of the size of the verdict is manifest; that a verdict is excessive when it offends against all sense of right and shocks the judicial conscience; that the failure of the trial judge to set the verdict aside as excessive is significant, we conclude that we should not interfere with this verdict." Schwinegruber v. St. Louis Public Service Co., Mo. App., 241 S.W.2d 782, 789-790.
The last assignment of error is that the court erred in giving plaintiff's Instruction No. 3 because (a) "the instruction was ambiguous and misleading in that it was so worded that the jury could take into consideration the future loss of earning capacity, * * *"; and (b) "that there was no proof submitted which the jury could use as a guide to determine the pecuniary loss sustained by plaintiff as to time lost." Instruction 3 submitted the elements of damages which the jury could allow, and the criticized part reads: " * * * also his loss of time and of his earning capacity, if any, * * *."
We shall first consider the element of "loss of time." Plaintiff testified that he had been employed in the Chevrolet automobile plant for three years prior to the accident; that his wage at the time of the accident was $1.58 an hour; that he worked eight hours a day, and that he lost seven weeks of employment as a result of his injuries; that when he went back to work he could not return to his former job because it required stooping, bending and lifting; that he was given work installing air vents which weighed one-fourth pound, and which did not require him to do lifting, stooping or bending. In addition to his regular employment, he had been doing extra work at his home and for adjoining farmers prior to the time of the accident, but that he had not been able to do such work since the accident. It is true the record does not disclose the number of days plaintiff worked each week, but we think the evidence is sufficient to submit the issue of damages for time lost.
Defendant cites Kelly v. Kiel, Mo.App., 117 S.W.2d 1086. The instruction in that case was criticized because it did not limit the loss of earnings to the specific amount pleaded in the petition. There the evidence showed that plaintiff had lost more time and money than he had alleged in his petition. In Woods v. Kansas City Power & Light Co., Mo.App., 212 S.W. 899, 903, the court criticized the damage instruction because there was "no evidence whatever as to what were his earnings or his earning capacity." Those cases are not authority for the criticism leveled at Instruction 3.
With reference to defendant's criticism (a) to the effect that the instruction is ambiguous and misleading and so worded that the jury could take into consideration plaintiff's future loss of earning capacity, we do not believe the instruction is subject to this construction, but even if it is, there is evidence that plaintiff received permanent injuries which will affect his ability to do labor requiring bending, stooping and lifting. The mere fact that plaintiff was earning as much money doing different work at the time of the trial as he had earned prior to the accident, would not destroy the element of damage for the impairment of his capacity to work. Our courts, in several cases, have made a clear *876 distinction between the diminution or impairment of the capacity to labor and the loss of earnings, and have held that a recovery may be had for the diminution or impairment of the capacity to labor, although there may, in fact, be no actual loss of earnings. Kleinlein v. Foskin, 321 Mo. 887, 13 S.W.2d 648, 657; Estes v. Kansas City, C. C. & St. J. Ry. Co., Mo. App., 23 S.W.2d 193, 197; Hill v. Landau, Mo.App., 125 S.W.2d 516, 520.
Defendant also contends that Instruction 3 is erroneous because it did not require the jury to find that his loss of time and earning capacity directly resulted from the injuries complained of. He cites O'Leary v. Scullin Steel Co., 303 Mo. 363, 387, 260 S.W. 55. In that case the principal point of contention was whether plaintiff's loss of time and earning capacity were due to the injuries received or to a disease which he had prior to the injury, and the court did hold, under such circumstances, that the instruction should limit recovery to the damages directly resulting from his injuries. However, the court said, 303 Mo. 387, 260 S.W. 63: "It is an instruction which conceivably might be sound upon some states of fact. It might be so in a case in which it is conceded that an injury for which a defendant may be found liable, if at all, caused all the damages for which recovery is sought." That is the exact situation we have in the instant case. Defendant does not contend that plaintiff's loss of wages or capacity to work were attributable to some condition existing prior to the accident. What ever time he lost from work or capacity to labor is a result of the accident. The extent of those injuries is in dispute, but the cause is not controverted. We conclude that Instruction No. 3 was not prejudicial.
Finding no reversible error, the judgment is affirmed.
All concur.