Charles MORGAN, Respondent,

v.

John Marshall THOMPSON and Andrew J. Agers, d/b/a DeSoto Mining Company, and Lawson Cardwell, Appellants.

No. 46997.

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

H. L. C. Weier, Dearing, Richeson & Weier, Hillsboro, for appellants.

McClintock & Medley, Flat River, for respondent.

BOHLING, Commissioner.

This is an automobile collision action in which Charles Morgan secured a $10,000 judgment for personal injuries and damage to his truck against John M. Thompson and Andrew J. Agers, doing business as DeSoto Mining Company, and Lawson Cardwell, an employee of said Thompson and Agers. On this appeal, said defendants attack plaintiff's verdict directing instruction and contend that the damages awarded are excessive. Jesse Laxton was an original party defendant, but plaintiff dismissed as to him.

The collision involved three automobiles, although only two collided. It occurred about 3:30 p. m. on February 21, 1957, a clear day, on Highway No. 21, about two-tenths of a mile north of Highway No. 47 in Washington County, Missouri. Highway 21 has a concrete pavement 21 feet wide. A motorist southbound on No. 21 comes around a curve and, entering a long straight stretch of road, proceeds downgrade about 760 feet to a low point and then upgrade, with a no-passing zone, for about 260 feet to. the crest of the rise, where the collision occurred and where a side road, 22 feet wide, leads east to the "Whaley washer." A driveway, 24 feet wide, to Tom Merseal's house leads west from No. 21 and the crest of said upgrade is 35 steps, about 105 feet, south of the Merseal driveway. South of said crest No. 21 has another downgrade, followed by an upgrade for some distance and then levels off.

Plaintiff was northbound in his 1953 Ford pickup truck in the east lane and Jesse Laxton in his 1946 Ford coach was southbound in the west lane of No. 21. Noah Sullivan was 350 feet, more or less,

behind Laxton. Laxton and Sullivan were traveling 50 m. p. h.

Defendant Cardwell, who was on his way to the mill to check out for the day, had stopped his tractor-trailer, a "mining truck" about 24 feet long, at the Merseal driveway to pick up Mrs. Edith Valle, his wife's aunt.

The testimony favorable to the plaintiff was to the effect that as Laxton, southbound, and Morgan, northbound, were approaching the crest of the rise on No. 21 at the road leading east to the Whaley washer, Cardwell, after traveling forward about 40 feet on the shoulder, pulled onto the southbound lane of No. 21 at an angle when a short distance in front of Laxton, and caused Laxton, traveling 50 m. p. h., to apply his brakes, skid his car, swerve onto the northbound lane, and run head-on into the left front of Morgan's truck.

Laxton testified he noticed Cardwell's truck, standing still, when about 450 feet north of it, that when he was "I would say," "about" 50 feet from the truck, it started moving, not over 5 m. p. h., toward the pavement without the driver's giving any signal of his intention to do so; that he, Laxton, "slapped on" his brakes, which threw his car sideways, and had he not braked his car, it would have struck the side of the truck.

Noah Sullivan and Earl and William Hobart, who were riding with Sullivan, corroborated Laxton's testimony. The Hobarts estimated that the truck was pulling onto the pavement when they first saw it; that Laxton was 40, 45 or 50 feet and the Sullivan car was about 350 feet north of the truck; that Laxton's car went over into the northbound lane, and the collision occurred immediately. We state Sullivan's testimony in more detail later.

C. C. Maddox, of the State Highway Patrol, investigated the collision. He testified that there was debris on No. 21 from the wrecked cars; that a fresh skid mark, 60 feet long, started about the center of the southbound lane, swerved into the northbound lane, and ended within 6 to 8 feet of the debris; and that there was another skid mark in the northbound lane, 70 feet long, leading up to the debris.

Charles Morgan, plaintiff, testified he saw Laxton's car over the crest of the grade coming around the curve when he was some distance south of the crest, and then lost sight of it. He saw the cab of Cardwell's truck near the Merseal driveway when 250 to 300 feet south of it, and, when he was about at the crest of the grade and 100 feet or more south of the truck, it entered the highway about 40 feet south of the Merseal driveway. He then saw Laxton's car coming, kind of sliding, from maybe 20 feet or so back of the truck. Plaintiff turned his car to the right and practically got the left wheel off the highway before Laxton's car collided with his car. The rear of the truck was then about opposite the rear of his cab.

Defendant Thompson testified that one parked at the Merseal driveway could see 800 feet to the north. Cardwell testified that he looked in the tractor mirror, could see up the hill to the north, but he did not see the approaching Laxton car.

■ Defendants contend plaintiff's verdict directing instruction assumed, when Cardwell pulled onto the highway, that the distance between Laxton's automobile and Cardwell's truck was "so close that there was danger of collision."

So far as material to the issue plaintiff's said instruction (we italicize the questioned portion), after requiring the jury to "find and believe from the evidence" certain facts about which defendants concede there is no controversy, including the fact that, as plaintiff's northbound vehicle approached Cardwell's parked truck, Laxton's vehicle was approaching said truck from the opposite direction; "*and if you further find that defendant Cardwell saw, or by the exercise of the highest degree of care could have seen, the vehicle driven by Jesse Lax-*

ton approaching at such a speed and *so close that there was danger of collision,* and if you further find that thereafter" Cardwell started forward and drove his truck onto the southbound lane of No. 21 into the path of the Laxton vehicle, and Laxton in attempting to avoid a collision with said truck, voluntarily or involuntarily, caused his vehicle to move onto the northbound lane and into the path of plaintiff's vehicle, and Laxton's and plaintiff's vehicles collided in said northbound lane; "and if you further find that defendant Cardwell by so driving his truck into the south bound traffic lane of Highway 21 at a time when Laxton's vehicle was approaching at such a speed and *so close that there was danger of collision,* failed to exercise the highest degree of care, then you are instructed that defendant Cardwell was negligent * * *.''

Reading the instruction as a whole we are of the opinion a jury would understand, having first been required to find that the Laxton car was approaching Cardwell's parked truck, that the additional required finding was that Cardwell saw, or should have seen, that Laxton's said approach was "at such a speed and so close that there was danger of collision" if Cardwell started forward and drove his truck onto the southbound lane of No. 21 into the path of the Laxton vehicle. Especially is this so under the instant record in view of instruction No. 4, reading: "The jury is further instructed that the court does not mean for you to assume as true or established any of the matters mentioned or referred to in the instructions, but leaves you to determine from the evidence whether or not such matters have been established as facts by the evidence." The cases are to the effect that under given instruction No. 4 the jury could not have been misled into an interpretation of plaintiff's verdict directing instruction to mean that the existence of any fact therein was assumed. Green v. Kansas City, Mo.App., 107 S.W.2d 104[1]; Rhinelander v. St. Louis-S. F. R. Co., Mo., 257 S.W.2d 655

[9]; McAnany v. Shipley, Mo.App., 196 S.W. 378[2]; Mastin v. Emery, Bird, Thayer Dry Goods Co., 236 Mo.App. 487, 140 S.W.2d 720[4]; Ziervogel v. Royal Packing Co., Mo.App., 225 S.W.2d 798[10]. What we have said disposes of a like contention regarding the second "so close that there was danger of collision." See also Williams v. St. Louis Pub. Serv. Co., 335 Mo. 335, 73 S.W.2d 199[5]; Morris v. Alexander, Mo.App., 275 S.W.2d 373[10].

Defendants also contend said instruction failed to properly hypothesize facts concerning the distance between Laxton and Cardwell and presented the jury with an assumption of a conclusion concerning this distance. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500[2, 3].

Defendants direct attention to the testimony of plaintiff's witnesses Laxton, William and Earl Hobart and Sullivan with respect to how far Laxton was north of Cardwell when Cardwell began to pull out onto the highway. The testimony of the witnesses as to the distance between Laxton's car and Cardwell's truck when it made its turn onto the pavement were mere estimates or opinions. They involved the inexactness of observation and memory, were not positive statements of fact, and did not preclude reliance upon other favorable testimony or inferences consistent therewith. Consult Smith v. Siercks, Mo., 277 S.W.2d 521, 525[3]; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280[2], and cases there cited; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558[9]; Davidson v. King, Mo.App., 309 S.W.2d 132, 135[3, 4]; Tunget v. Cook, Mo.App., 94 S.W.2d 921, 925 [2, 3].

Laxton and the Hobarts estimated this distance at 50 feet and at 40 to 50 feet, respectively. Sullivan's estimate, which defendants stress, on direct examination, repeated on cross-examination in answer to a leading question, was that Laxton was "300 feet, more or less" north of Cardwell's truck when witness first saw it pulling out onto the highway; but defendants over-

look other testimony of Sullivan when plaintiff's counsel, after stating the witness appeared confused, repeated the question, asked the witness if he understood the question, and the witness answered: "Yes. I would say 75 feet", which estimate is consistent with Sullivan's testimony that he was north of the Laxton car approximately 350 feet, more or less, and 400 feet or better north of Cardwell's truck when he first saw it; and on redirect examination Sullivan repeated said last-mentioned estimates. In this state of the record the only conceivable explanation of the inconsistencies of Sullivan's estimates of the distance involved is, as indicated by his answers, that he was temporarily confused when estimating the distance at 300 feet, and said estimate is not substantive evidence of the distance. We need not pass on the substantiveness of his estimate of 75 feet. Stephens v. Thompson, Mo., 293 S.W.2d 392, 394; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647; Foerstel v. St. Louis Pub. Serv. Co., Mo.App., 241 S.W.2d 792, 798[6]. The more positive testimony of record bearing on this issue is that of Patrolman Maddox that the Laxton car's skid marks were 60 feet long and ended about 8 feet north of the point of impact, which would indicate, giving consideration to reaction time, that Laxton, traveling 73 feet a second, was 50 feet or more north of the truck when it started upon the pavement.

There is no such divergence in the estimates of probative value of the distance between Laxton and Cardwell with respect to negligence on the part of Cardwell when he drove his truck onto the southbound lane of No. 21 into the path of the Laxton vehicle as to require a more specific hypothesis of the facts than was submitted in plaintiff's instruction. We find no prejudicial error. (One might consult Laws 1953, p. 593, subd. 20; RSMoSupp.1957, § 304.021, subd. 5, V.A.M.S. Our rulings are not based on said section.)

Defendants' last point is: "the verdict of the jury for $10,000.00 was high and excessive and should be reduced by this court and remittitur ordered."

■ Plaintiff takes the technical position we should refuse to consider the point because it does not comply with Supreme Court Rule 1.08, we understand, because defendants do not contend this verdict is grossly excessive. Plaintiff stresses Joseph v. Mutual Garage Co., Mo.App., 270 S.W.2d 137, 143[5]; State ex rel. Ruescler Motor Co. v. Klaus, Mo.App., 281 S.W.2d 543, 545[1]. Defendants argue they are entitled to a remittitur of at least $6,000. We consider the statement in defendants' point that the $10,000 verdict "should be reduced by this court and remittitur ordered" is sufficient to meet the requirements of Rule 1.08(a)(3), 42 V.A.M.S. Consult cases pointing out the distinction between an assignment that "the verdict is excessive" and an assignment that "the verdict is so grossly excessive as to indicate that it is the result of bias and prejudice." Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304, 309; Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79, 86[23, 24]; Myers v. Karchmer, Mo., 313 S.W.2d 697, 710[24]. We overrule plaintiff's contention.

■ We view the evidence as to plaintiff's injuries from a standpoint favorable to him and ignore defendants' contrary evidence.

■ After the accident plaintiff thought he could stand up but fell when he attempted to do so. He sustained bruises and abrasions on his face and head, and left iliac crest, lacerations on his left knee and left arm, a fractured nose, with a definite curvature of his nasal septum. He suffered pain in his nose, the small of his back, his legs, arms and left hand. Plaintiff's eyes were swollen shut. He was made sore and stiff. A fish hook was removed from the back of his left hand, which was swollen.

If plaintiff's age is of record, we have inadvertently overlooked it. Plaintiff was

taken to the Missouri Pacific Hospital where he was examined by Dr. Joseph A. Lembeck. Plaintiff testified he later saw Dr. McKinstry and then Dr. Gibson, a chiropractor, who gave him adjustments and treated his nose and back, and that he did not consult any other doctor. Drs. McKinstry and Gibson did not testify, and there is no further testimony covering their treatment of plaintiff. Dr. G. L. Watkins, plaintiff's witness, examined plaintiff February 5, 1958, and Dr. R. H. Donnell, defendant's witness, examined plaintiff before the trial. We find no testimony of any charge for hospital, doctor or medical services.

Plaintiff remained at the Missouri Pacific Hospital for two nights and two days and was then confined to his home for two or three days. Dr. Joseph A. Lembeck, an orthopedic surgeon, examined plaintiff at the hospital. Plaintiff did not report back to the hospital after his discharge at noon, February 23, 1957. Dr. Lembeck testified plaintiff was conscious and rational when admitted at 5:00 p. m., but that plaintiff gave a history of unconsciousness immediately after the collision. On cross-examination plaintiff testified he was dazed, not "plumb knocked out," for an hour or more after the collision. Prior to his injuries plaintiff lifted large pieces of metal, weighing 100 pounds or more, and stacked them. Plaintiff returned to work at the Missouri Pacific DeSoto car shops about ten days after the collision and had to quit after two hours on account of the pain in his back. He had had no prior back trouble. He was given lighter work to do. He lost fourteen or fifteen days' work following the collision and additional days later on account of his back, but there is nothing of record to indicate how many. He earned $1.98½ an hour for a forty hour week. He testified his back still pains him if he does "something heavy," or the weather becomes cold or damp, and sometimes at night if he remains on his back too long.

Plaintiff's nose was pushed over to the side and now has· a hump or knot on it. There was testimony that after the accident plaintiff's tone of voice differed and his speech was not as distinct as before. Plaintiff has trouble breathing through his nose and this causes him difficulty in sleeping. Dr. Watkins testified the condition of plaintiff's nose was permanent until corrected by surgery, and in his opinion plaintiff would have good results if he had it straightened out. Plaintiff did not give any testimony respecting sinus trouble; but Dr. Donnell, defendant's witness, testified he thought plaintiff had "some sinus trouble" attributable to the deviation of the septum, but whether this was permanent rested in conjecture.

Dr. Lembeck, Dr. Donnell and Dr. Watkins took X-rays of plaintiff's skull and spine. Dr. Watkins testified that his X-rays showed a fractured nasal bone; that he found no fracture or dislocation or any bone injury to plaintiff's back; that the only evidence of injury to plaintiff's back was subjective; that plaintiff "probably" had a lumbo-sacral sprain, "sort of chronic" now, and he could not predict its permanency, which was speculative. Drs. Lembeck and Donnell found no fracture or dislocation of any of plaintiff's bones.

Plaintiff estimated the damage to his car at $695.00.

Plaintiff cites, with respect to back injuries of somewhat similar nature, Long v. St. Louis Pub. Serv. Co., Mo.App., 288 S.W.2d 417, 427; Statler v. St. Louis Pub. Serv. Co., Mo.App., 300 S.W.2d 831, 837 [10–12] (upholding verdicts for $4,500 and $3,500, respectively) ; and, with respect to nose injuries, Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S.W.2d 1079, 1083[14] ($18,800 reduced to $8,800), and Emerson v. Mound City, Mo., 26 S.W.2d 766[3] (upholding a $10,000 verdict to a young mother).

Defendants cite, with respect to back injuries, Harvey v. Gardner, 359 Mo. 730,

223 S.W.2d 428, 433[11] ($8,000 reduced to $5,000); Kulengowski v. Withington, Mo.App., 222 S.W.2d 579, 586 (verdict for $4,500 reduced to $3,000); Harding v. Kansas City Pub. Serv. Co., Mo.App., 188 S.W.2d 60, 69 ($5,000 verdict reduced to $3,000); and, with respect to nose injuries, Foster v. Kurn, 236 Mo.App. 1149, 163 S.W.2d 133, 139[14–16] (trial court reduced $7,024 to $5,000, which was affirm-. ed); McBride v. Clarida, Mo.App., 254 S.W.2d 36 ($5,000 reduced to $3,000).

We have read the foregoing cases and others. We consider the back injuries shown in plaintiff's cases to be of a more permanent nature than plaintiff's, and the facial injuries in plaintiff's cases to be more serious, extensive and essentially different from plaintiff's nose injury. There was also evidence of the permanency of the injuries in defendants' Harvey, Kulengowski and Harding cases, and the injuries received in defendants' Foster case appear greater in number and more severe. There is very little in the instant record to establish that plaintiff has sought medical relief from a severe back injury, and its permanency is not established. Plaintiff's doctor testified plaintiff should have a good result from an operation on his nose. Kiger v. Terminal R. Ass'n, Mo., 311 S. W.2d 5, 14[17], in considering the sufficiency of proof of the permanency of injuries, states: "'* * * the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor.'" See Fann v. Farmer, Mo.App., 289 S.W. 2d 144[13]. We reach the conclusion that the instant verdict is excessive upon giving consideration to the factors involved and an effort to reach a reasonable uniformity of damages. Kiger v. Terminal R. Ass'n, supra, 311 S.W.2d at page 15. If, therefore, plaintiff will within 15 days from the date hereof remit here the sum of $2,000, a judgment for $8,000 will stand affirmed as of the date of the original

judgment; otherwise the cause is remanded for a new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and STONE, Special Judge, concur.